1WOODARD, Judge.
Pursuant to a vehicular collision, which occurred on February 8, 1996, between a vehicle operated by Mr. Daryl Bowie and another operated by Mr. Robert Horne, Mr. Bowie sued Mr. Horne and its insurer, International Indemnity Company (IIC). The trial court found Mr. Horne liable and awarded damages to Mr. Bowie. IIC appeals the award of damages.
FACTS
This case stems from a vehicular collision which occurred on February 8, 1996, between a 1982 Pontiac Bonneville operated by Mr. Bowie and a 1980 Ford tractor operated by Mr. Robert Horne, in which Mr. Horne’s vehicle rear ended Mr. Bowie’s, causing him and his wife injuries. The Bowies were transported to the emergency room at the Rapides - General Hospital. Dr. J.M. Tarpley examined Mr. Bowie and noted that there was no loss of consciousness, blurred vision, nausea, or vomiting; however, he found evidence of cervical sprain and contusion of the right shoulder, bright hip, and right knee. Dr. Tarpley prescribed some pain medication for Mr. Bowie and released him with instructions to have a follow up visit with his regular doctor.
Subsequently, on February 23,1996, Mr. Bowie consulted with Dr. Robert Rush, complaining of a burning sensation in his neck and shoulders, as well as headaches. He also complained of feeling pain in his hip, flashbacks, and loss of memory. Dr. Rush’s examination revealed that Bowie had a decrease range of motion in his cervical spine with tightness and tenderness in his suboccipital, levator, upper tra-pezius, and romboid muscle groups. Accordingly, Dr. Rush initiated a regiment of physical therapy and prescribed anti-inflammatory preparations, as well as antidepressants.
Dr. Rush then saw Mr. Bowie on March 18, 1996. At that time and in addition to his previous complaints, Mr. Bowie complained of problems with his right jaw which popped when opening or closing. Dr. Rush diagnosed that the latter problem related to a temporomandibular joint dysfunction (TMJ), for which he referred Mr. Bowie to Dr. John Benjamin, a dentist who specialized in TMJ. An MRI of the cervical and lumbar spine were performed and interpreted as normal except for a minor stenosis at L5-S1. Dr. Rush qualified the lumbar spine and cervical injuries suffered by Mr. Bowie as moderately severe. He thought that the TMJ condition was within the severe range of injury.
Two of Mr. Bowie’s recurring complaints regarded sleep disturbance and fear of driving. Dr. Rush opined that Mr. Bowie’s psychological problems were real and consistent with problems sometimes suffered by persons having accidents and enduring physical pain for some time. Dr. Rush stated that during the course of the treatment from February 23, 1996 to December 11, 1996, Mr. Bowie was not able to return to work.
Mr. Bowie first consulted with Dr. Benjamin on March 12,1996. Although x-rays did not show any fracture of the jaw, Dr. Benjamin could clearly hear a pop as Mr. Bowie opened his jaw. Dr. Benjamin ordered Mr. Bowie to wear a splint. Nevertheless, the splint did not appear to have *749 any beneficial effects, and Dr. Benjamin referred Mr. Bowie to Dr. Robert Levy, an oral surgeon. Pursuant to his examination, Dr. Levy recommended that Mr. Bowie undergo surgery to correct the TMJ. During the surgery performed under general anesthetic, Dr. Levy made the following findings: |S“I found the anterior cartilage, long-standing[1] inflammatory changes of chondromalacia, synovitis and inflammation.”
Dr. Levy considered the surgery a success, but stated that Mr. Bowie would have to wear a corrective splint, while sleeping, for the remainder of his life. The surgery was also followed with physical therapy, and Mr. Bowie was ordered to observe a restrictive soft diet.
Finally, on October 11, 1996, Mr. Bowie committed himself to the Winnard Hospital’s Adult Psychiatry Unit (Winnard) for major depression with suicidal ideation.
Mr. Bowie filed a petition against Mr. Horne and his insurer, IIC, on September 6, 1996. Pursuant to a bench trial held on April 7, 1998, Mr. Bowie was awarded the following damages:
General Damages $200,000.00
Past Medical Expenses $ 24,473.88
Future Medical Expenses $ 4,000.00
Lost Wages $ 5,106.30
Loss of Consortium $ 5,000.00
The trial court also awarded the following expert witness fees:
Dr. Robert K. Rush $ 1,200.00
Dr. James W. Quillin $ 500.00
IIC appeals.
ASSIGNMENTS OF ERROR
IIC alleges that the trial court erred in awarding Mr. Bowie: (1) $200,000.00 in general damages, (2) $5,000.00 in loss of consortium, (3) $4,000.00 in future medical expenses, and (4) $500.00 in expert witness fees to Dr. James Quillin.
J^LAW
General Damages
It is well settled that “ ‘[gjeneral damages’ are those which cannot be fixed with pecuniary exactitude; they involve mental or physical pain and suffering, inconvenience, loss of intellectual gratification, or other losses of life or lifestyle which cannot be definitely measured in monetary terms.” Craven v. Universal Life Ins. Co., 95-1168 (La.App. 3 Cir. 3/6/96); 670 So.2d 1358, 1368, writ denied, 96-1332 (La.9/27/96); 679 So.2d 1355; Boswell v. Roy O. Martin Lumber Co., Inc., 363 So.2d 506 (La.1978).
Also well settled is the fact that the finder of fact has “much discretion” in awarding general damages. See Reck v. Stevens, 373 So.2d 498 (La.1979), Thus, on review, an appellate court may reverse a trial court’s award of general damages only upon finding that the trial court abused its discretion. The supreme court in Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1260 (La.1993); cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994), specified our role as follows:
[T]he role of an appellate court in reviewing general damages is not to decide what it considers to be an appropriate award, but rather to review the exercise of discretion by the trier of fact. Each case is different, and the inadequacy of the award should be determined by the facts or circumstances particular to the case under consideration.
The supreme court in Youn also specified the type of inquiry that we should perform to determine whether or not a trial court abused its discretion, when it stated:
The standard for appellate review of general damage awards is difficult to express and is necessarily non-specific, and the requirement of an articulated basis for disturbing such awards gives little guidance as to what articulation suffices to justify modification of a gen- *750 eraos or stingy award. Nevertheless, the theme that emerges ... is that the discretion vested in the trier of fact is “great,” and even vast, so that an appellate court should rarely disturb an award of general damages. Reasonable persons frequently disagree about the measure of general damages in a particular ease. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award.
|sWhen these and other factors are properly considered under the standards discussed above, we cannot say that the trial judge abused his discretion in fixing the generous awards of general damages. The awards are not obviously the result of passion or prejudice, and they bear a reasonable relationship to the elements of the proved damages. Many rational triers of fact could have decided that a lower award is more appropriate, but we cannot conclude from the entirety of the evidence in this record, viewed in the light most favorable to the prevailing party in the trial court, that a rational trier of fact could not have fixed the awards of general damages at the level set by the trial judge or that this is one of those “exceptional cases where such awards are so gross as to be contrary to the right reason.”
Id. at 1261 (citations omitted) (emphasis added).
Following this principle set forth by the supreme court in Youn, we cannot say that the trial court abused its “much discretion” by setting the amount of general damages to $200,000.00. The record indeed reflects that Mr. Bowie’s mental and physical conditions were severe. Clearly, the award of general damages bears a reasonable relationship to the element of the proved damages.
Loss op Consortium
It is well settled that as with awards of general damages, the trier of fact is given much discretion in its decisions regarding awards for loss of consortium. Mathews v. Dousay, 96-858 (La.App. 3 Cir. 1/15/97); 689 So.2d 503.
In the case sub judice, Mr. Bowie asserted that his sexual relationship with his wife had changed since the accident. Also, while he was committed at Winnard, he stated that he did not see any purpose to go on with his life. Thus, we find that the trial court did not abuse its discretion in awarding him $4,000.00 in damages for loss of consortium.
Future Medical Expenses
We do not find any merit in this assignment of error. Regarding awards of future medical expenses, the plaintiff has the burden of proving that it is more probable than not that future medical expense will be incurred. Baker v. Freeman, 97-604 (La.App. 3 Cir. 10/29/97); 702 So.2d 1140, writ denied, 97-2984 (La.12/10/97); 704 So.2d 1176.
jfiln the instant case, it is established that Mr. Bowie will have to wear a corrective splint for the remainder of his life. Although the amount for same is not readily ascertainable, an award of $4,000.00 for a $350.00/$400.00 splint which must be changed every two years, if not lost beforehand, is not unreasonable and out of the trial court’s discretion.
Expert Fees
IIC alleges that the trial court erred in awarding a $500.00 expert fee for the deposition of Dr. Quillin, because he did not testify at trial and the cost for the deposition transcript submitted at trial en lieu of his live testimony was paid by IIC.
In the instant case, the trial court’s award of the $500.00 expert fee for Dr. Quillin’s deposition was predicated upon *751 Dr. Quillin’s affidavit, dated April 9, 1998, wherein he stated that his usual charge for a court appearance would have been $1,400.00. Dr. Quillin was informed that his testimony was not needed mid-morning of April 7, 1998, and he had to cancel the appointments which were scheduled for that day. Nevertheless, because his ap-, pearance at trial was no longer required, he agreed to reduce his fees and expenses from $1,400.00 to $500.00. Although the $500.00 award was not based on his live testimony at trial, we find that the trial court had a rational basis in assessing the award and, thus, did not abuse its discretion. See La.R.S. 13:3666.
CONCLUSION
For the foregoing reasons, we find no abuse of discretion in the trial court’s award of general damages, future medical expenses, expert fees, and damages for loss of consortium. Accordingly, the decision of the trial court is affirmed.
AFFIRMED.

. Extremely inflamed.