11 COOKS, Judge.
The plaintiffs appeal the jury’s general damage award of $10,000.00, contending it was inadequate. Finding merit in plaintiffs’ contention, we raise the award of general damages to $30,000.00.
FACTS
On August 18, 1995, Dwight Brasseaux was driving in a westerly direction on Louisiana Highway 14 in Abbeville, Louisiana, with Charlene Brasseaux in the front passenger seat. Brasseaux’s vehicle was struck from the rear by a 1989 Ford pickup truck owned by Jody Patchen, and driven by Lisa Hagan. The force of the collision propelled the Brasseaux vehicle into a preceding car.
Officer Sean Ramke, of the Abbeville Police Department, investigated the accident. Officer Ramke noted the Brasseaux vehicle moved approximately three feet after impact. He listed the damage to the Brasseaux vehicle as minor; noting, as well, that Charlene Brasseaux sustained moderate injuries.
|2The Brasseauxs filed suit against Lisa Hagan and her automobile liability insurer, American Deposit Insurance Company (American), to recover damages for personal injuries sustained in the automobile accident. Hagan and American filed answers. The Brasseauxs then filed a First Supplemental and Amending Petition naming State Farm Insurance Company as a defendant and alleging it issued an automobile liability insurance policy to Dwight Brasseaux which provided underin-sured/uninsured motorist coverage.
Subsequently, plaintiffs executed a compromise dismissing, with prejudice, their claims against Lisa Hagan and American. State Farm was the sole defendant when the matter was tried. The jury returned a verdict in favor of plaintiffs, awarding Charlene Brasseaux the following damages:
GENERAL DAMAGES
Past, Present and Future:
Physical pain and suffering $10,000.00
Mental pain and suffering, including loss of enjoyment of life $ -0-
Permanent Disability $ -0-
SPECIAL DAMAGES
Past medical expenses $11,454.91
Future medical expenses $10,000.00
LOSS OF CONSORTIUM
Past, present and future loss of consortium $25,000.00
Plaintiffs lodged this appeal asserting the jury erred in only awarding Charlene $10,-000.00 in general damages. The jury also rendered a verdict in favor of Dwight Brasseaux. No party has appealed any portion of that verdict.
|,ANALYSIS
After the accident, Charlene experienced pain in her neck and lower back. She visited her family physician, Dr. John Thibodeaux, for treatment. Dr. Thibo-deaux testified he saw objective signs of injury, including muscle spasms in her right trapezius muscle and a decreased range of motion in her neck and lower back. He concluded she sustained a cervical lumbosacral strain. After numerous visits and continued problems with neck pain and headaches, Dr. Thibodeaux referred her to Dr. Louis Blanda for further treatment. Dr. Thibodeaux reviewed all of Charlene’s medical records before testify *286 ing, including the tests given by Dr. Blan-da. In pertinent part, he related:
Q. Now, you’re of the opinion, are you not, that it was the automobile accident that she described to you — that Charlene described to you that caused all this?
A. That’s correct.
Q. Have you been provided with information from any source whatsoever, to indicate that her neck injury happened at some other time and some other place?
A. No, sir.
Q. Have you been given any information whatsoever that Charlene Bras-seaux’s neck injury was not a result of this automobile accident, but just spontaneously occurred?
A. No, sir.
Q. Everything fits together, doesn’t it?
A. Yes, sir.
[[Image here]]
Q. Now, Doctor, is a condition like this, a ruptured disc in the neck, is this a painful condition?
A. Yes, sir.
Q. Is this a condition that’s permanent?
14A. Yes, sir.
Q. Doctor, as you’re sitting here today, are you of the — are you of the opinion that the symptoms that Charlene Bras-seaux has today are the symptoms that she is going to have, in all probability, for the balance of her life insofar as her neck is concerned?
A. That’s probably correct.
Q. Now, what can she do for those— besides putting surgery aside for a moment, what can she do for those symptoms?
A. Well, take medications for one thing. Restrict her activities pretty markedly. She can use heat, and maybe some physical therapy intermittently might benefit her. Nerve stimulation might give her some relief from pain.
Q. But this is really a lifelong battle; is it not?
A. Yes, sir.
Dr. Louis Blanda, who was accepted as an expert in orthopedics, examined Charlene and recommended she undergo an EMG and MRI. Dr. Blanda found the results of the EMG were normal. The MRI showed areas of degenerative disc problems at the C-5, C-6 and C-7 levels. However, Dr. Blanda testified this degeneration was not unusual for a person of Charlene’s age. But, Dr. Blanda did find cause for concern when he discovered Charlene sustained a C-3, C-4 level disc herniation with displacement to the spinal cord. He recommended a program of physical therapy for Charlene, which was somewhat successful; but, she was still experiencing frequent headaches and neck pain. He discussed surgical intervention to relieve Charlene’s pain, but she decided against it. Dr. Blanda testified the herniation Charlene sustained is a permanent condition; and, he too confirmed her neck problems were caused by the accident at issue.
Dr. Charles Olivier, an expert in orthopedics, examined Charlene at the behest of State Farm. He examined all of her past •medical records, including all of Dr. Thibo-deaux’s and Dr. Blanda’s reports. He agreed there was a “disc problem” at C-3, |sC-4. Focusing on the cause of Charlene’s neck problems, Dr. Olivier testified:
Q. And do, once again, if you’re being asked — you, as an expert and as a medical doctor, are being asked to formulate an opinion as to what’s the cause of that herniated disc at C-3, C~á, your response will have to be, based upon the history, that it was the automobile accident of 1995; am I right?
A. Correct.
Q. Now, during the time, and I ask this question concerning both Dwight and *287 Charlene, they were cooperative with you?
A. Yes, sir.
Q. They voiced some complaints of pain to you that you believed?
A. Yes, sir.
Q. And there was nothing about their presentation that was unusual?
A. No, sir.
Q. Doctor, the bottom line in this is that Dwight and Charlene were involved in an automobile accident that caused them certain injuries, Dwight to his neck, but more importantly to his lower back, Charlene to her neck, and they are still having medical problems even as today when you saw them; am I right?
A. Yes, sir.
State Farm points out that Charlene was involved in a previous automobile accident in 1983 and a work accident in 1993 for which she sought medical care. State Farm suggests many of Charlene’s physical problems were caused by these accidents rather than the accident at issue. However, the 1993 work accident caused injury to Charlene’s lower back. Counsel for Charlene noted at trial in this case she was seeking damages only for the injuries she suffered to her neck, not her lower back. Although the record revealed Charlene was treated for neck problems after the 1983 automobile accident, she testified her neck problems completely subsided. Additionally, an MRI taken of her neck in 1986 showed no herniation at the C-3, C-4 level. Both Dr. Thibodeaux and Dr. Blan-da were fully aware of Charlene’s 1983 and |fi 1993 accidents. They reviewed all of the relevant prior medical records before each concluded Charlene’s current neck problems are causally related to the accident in question.
With this medical background in mind, we turn to address the adequacy of the $10,000.00 general damage award to Charlene. In reviewing such awards the Supreme Court explained in Youn v. Maritime Overseas Corporation, 623 So.2d 1257 (La.1993), we must focus initially on whether the award for the particular injuries and their effects under the particular circumstances on the particular injured person is a clear abuse of the vast discretion of the trier of fact. It is only after such a determination of abuse of discretion is made that a resort to prior awards is appropriate.
Employing this standard of review, we find that the jury abused its discretion in awarding Charlene only $10,000.00 as general damages, considering the circumstances and the particular medical facts established in this case. The jury awarded Charlene $21,454.91 for medical expenses, including $10,000.00 for future medical costs. This award evidences the jury’s acceptance of Dr. Thibodeaux’s and Dr. Blanda’s findings. The record does not contain any competent evidence contradicting the doctors’ testimony. The award of future medicals also confirms the jury’s acceptance that Charlene will encounter future medical problems. Her condition is permanent. She will experience “some pain” for the balance of her life and she will, from time to time, have to “take medication,” restrict her physical activities, and “maybe [undergo] some physical therapy intermittently.”
Under the circumstances, the jury’s general damages award was abusively low; and we amend the award, increasing it to $30,000.00. This is the lowest reasonable amount awardable.
IvDECREE
For the reasons assigned, we amend the judgment of the trial court to award plaintiff, Charlene Brasseaux, $30,000.00 in general damages. All costs of this appeal are assessed to defendant, State Farm.
JUDGMENT AMENDED AND AS AMENDED, AFFIRMED.