1 .EDWARD A. DUFRESNE, JR., Chief Judge.
This is an appeal by Ochsner Clinic, L.L.C. and Alton Ochsner Medical Foundation (collectively Ochsner), defendants-appellants, from a $125,000 judgment in favor of Richard Holtzclaw, plaintiff-appel-lee, in this medical mal-practice action. For the following reasons, we affirm the judgment.
The basic facts are not disputed. On September 6, 1989, at about 11:00AM, Holtzclaw underwent a colonoscopy, a nonsurgical procedure, by Dr. Terrell C. Hicks at Ochsner to remove three polyps in his colon. The procedure was apparently uneventful and he was discharged from the hospital at 12:30 PM. During the early afternoon of the next day, the 7th, he began feeling abdominal pain and he and his wife testified that they both tried to call Dr. Hicks, but could not get through to his office. Holtzclaw said that he finally *497 spoke to a person, who identified herself as a nurse in Dr. Hicks’ office, at about 5:00 PM. He told her that he was having severe abdominal pain and probably had a fever. This person told him that 13everyone was gone for the day and that he should take aspirin and call back in the morning. Dr. Hicks testified that he was never informed of this call.
The following morning Holtzclaw was still in pain and his wife drove him to Ochsner at about 10:00 AM. Dr. Hicks was not immediately available and plaintiff said that he asked the nurse if it would be alright for him to have lunch and was told it would be no problem. Dr. Hicks saw him at about 1:00 PM and after some initial tests determined that he had a perforation of the intestine due to the removal of the polyps. Dr. Hicks explained that occasionally perforations result from the polyp removal procedure and that they sometimes develop hours or even days after the procedure is performed. He said that if they are discovered within 12 hours of their developing they can usually be closed surgically without further complications. He also noted that often these perforations heal up without surgical intervention if they are small and if they do not become infected.
Beyond the 12 hour period infection usually sets in due to seepage of intestinal matter and then the problem become more serious. Dr. Hicks said that if the intestine lining at the location the perforation has become infected it will not heal properly and close the hole. In that event it is necessary to cut out a portion of the intestine and rejoin the severed ends. When this is done it is further necessary to perform a colostomy, a procedure whereby bowel waste is shunted out of the intestine and into an external bag. Once the intestine heals, the shunt is removed and the intestine and bowel functions usually return to normal, though often with lingering bowel problems.
In the present case, Dr. Hicks testified that when Holtzclaw returned to the hospital on the 8th he quickly diagnosed the perforation. At that point he told plaintiff that there were two choices. He could perform immediate Dsurgery, which would probably result in the need for a colostomy, or he could treat the situation with antibiotics and see if the infection could be stopped. In the latter ease it might be possible to avoid surgery altogether. Plaintiff agreed to try the antibiotic treatment and this was done. However, after a day or so it became apparent that the infection was not being brought under control, so Dr. Hicks performed the surgery and accompanying colostomy.
The colostomy was reversed about six weeks later. However, during this period plaintiff was hospitalized for three days because of a bowel blockage, and he spent another 12 days in the hospital during the reversal procedure. In the 12 years since the surgeries he has had about six incidents of bowel blockages, three of which required hospitalization. Dr. Hicks said that such problems are not uncommon in colostomy situations.
After a medical review panel exonerated the defendants, Holtzclaw sued Dr. Hicks and Ochsner for malpractice. Ochsner states in its brief here the three grounds for relief urged by plaintiff in this action as follows:
Holtzclaw sued both Hicks and Ochs-ner, contending that the Ochsner employees were liable for three negligent acts: 1) handling of the telephone call at 5:00 p.m. on the 7th; 2) someone telling the patient he could go eat lunch on the 8th; and failing to administer antibiotics timely.
A jury trial ensued.
The jury returned a verdict in favor of Dr. Hicks, but against Ochsner on findings *498 that the actions of the nurse, who handled the 5:00 PM call on the 7th and advised plaintiff to take aspirin and call the next morning, fell below the standard of care, and that these actions caused plaintiff injury. It awarded him $125,000 in damages. Ochsner now appeals and Holtzclaw has answered that appeal.
IsOchsner’s first argument is that there was no proof of causation, i.e. there was insufficient evidence to show that the nurse’s actions more probably than not caused injury to plaintiff. We first note that the testimony of all physicians who testified at trial, including Dr. Hicks, was that the nurse’s instructions to take aspirin and come to the hospital the next day, coupled with her apparent failure to inform Dr. Hicks that Holtzclaw had called complaining of abdominal pain, clearly fell below the acceptable standard of care. The remaining inquiry here is thus only whether this negligence caused injury to the plaintiff.
Dr. Hicks testified that perforations usually become infected after 12 hours of their appearance and that once the infection becomes severe a colostomy is almost inevitable. Moreover, he said that even had plaintiff come to the hospital the night of the 7th he would still have used antibiotic treatment and observed him for a day or so before doing surgery. Ochsner argues here that because more than 12 hours had elapsed between the original polyp removal and the 5:00 PM call on the 7th, the treatment would have been the same had he had returned on that evening rather than on the following day. It concludes that the nurse’s actions were thus irrelevant to the issue of whether a colostomy would have resulted in either case.
While this argument has some force, it omits one crucial element of the testimony. Dr. Hicks testified that it is impossible to know when a perforation might actually develop after a colonoscopy, and sometimes this problem can arise several days after the initial procedure. In the present case, it may well have been that the perforation developed within the 12 hours before the 5:00 PM telephone call. Moreover, given that the perforation was more than 12 hours old when antibiotics were administered | fion the 8th, Dr. Hicks even then had some hope that this conservative treatment might still avert surgery and the resulting colostomy.
In Martin v. East Jefferson General Hospital, 582 So.2d 1272 (La.1991), the court set forth the analysis to be used in reviewing findings of causation in the medical malpractice context. The court first noted that the medical malpractice claimant must first show that the care fell below the ordinary standard of care and that this negligence caused the injury. It further stated that these are factual questions which should not be reversed on appeal absent manifest error. The court continued it analysis by stating that when the patient dies, the plaintiff need not prove that but for the negligence the patient would have lived. Rather, it only need be shown that the negligence deprived the plaintiff of a chance of survival. Ant it reiterated that the issue of causation is a factual on subject to the manifest error rule.
While Martin, supra, was a death case, we see no reason not to apply the analysis of a loss of the opportunity for a better result to the present situation. As noted above, Dr. Hicks was attempting to forestall the need for surgery by using antibiotics, he testified that the first 12 hours after appearance of the perforation are critical in stopping infection, and that it was impossible to know when the perforation actually occurred. It is clear that something had happened to plaintiff on the *499 afternoon of the 7th when he began to experience abdominal pains.
Considering the above undisputed facts, it was reasonable for the jury to conclude that the failure of the nurse to either tell plaintiff to come to the hospital immediately or to inform Dr. Hicks of the call delayed the administration of antibiotics for some 18 hours. Since time was critical in arresting any infection, it was equally reasonable for the jury to have found |7that this delay, caused by the nurse’s negligence, denied plaintiff the opportunity to avoid the colostomy by receiving timely treatment. Because these findings of negligence and causation are based on a reasonable interpretation of the evidence presented, we can not say they are manifestly erroneous and therefore must affirm them.
Ochsner’s second argument relates to introduction of evidence relating to the potential effects of the delay in administering antibiotics because of the 5:00 PM call on the 7th. It asserts that this constituted a new theory of the case which had not been previously raised in pleadings, and that it was prejudiced by admission of testimony on this point. We reject this assertion. In its own brief here Ochsner summarizes plaintiffs theory of the case as including late administration of antibiotics. As best we can make out, Ochsner seems to contend that the late administration of antibiotics noted in its brief as part of plaintiffs case had to do with the time on the 8th between when plaintiff arrived at the hospital at about 10: AM and sometime in the afternoon when the antibiotics were started, and not with the delay occasioned by the nurse’s handling of the call on the 7th. It argues that it was therefore surprised by testimony relating to the delay of the 7th. However, we fail to see what other import the 5:00PM call on the 7th could possibly have had on the case other than that it delayed the commencement of treatment. That being the case, the testimony about the potential effects of the delay in treatment from the evening of the 7th to the afternoon of the 8th was certainly within the matters pleaded, and this evidence was therefore properly admitted over Ochsner’s objection.
The final issue here concerns quantum. Ochsner contends the award was too high and plaintiff claims it was too low. The standard of review of general damage awards is whether the judge or jury abused their much | sdiscretion in fixing the awards. In Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993), the court reiterated the longstanding rule that an appellate court is not to decide what it considers an appropriate award, but rather to review the exercise of discretion by the trier of fact. Further, it is only when the appellate court determines, for articulable reasons, and considering the particular injuries to the particular plaintiff in his particular circumstances, that the judge or jury abused their much discretion that it may set aside an award as too high or too low. In the present case we have reviewed the award in light of the above criteria, but are unable to articulate any reasons why the jury here abused its much discretion in fixing the award. We therefore must affirm it.
For the foregoing reasons, the judgment of the district court is hereby affirmed.

AFFIRMED.