MICHAEL E. KIRBY, Judge.
 

 | ,Ms. Jo Ann Charles appeals the trial court judgment in her favor and against defendants, Tyrone Robinson and the City of New Orleans, in the amount of $38,300.00 plus interest and court costs. Ms. Charles’ appeal is based on her argument that the damages awarded to her are inadequate.
 

 On October 8, 2004, Jo Ann Charles and Kedrick Jackson filed a petition for damages against defendants, Tyrone Robinson and the City of New Orleans Police Department, for injuries allegedly suffered in a vehicular collision on October 10, 2003. According to the petition, Jo Ann Charles was driving in a southerly direction on Woodland Drive in New Orleans near its intersection with Dover Place, when a vehicle driven by Tyrone Robinson, a police officer in the course and scope of his employment, turned left in front of Ms. Charles’ vehicle causing a collision. Mr. Kedrick was a passenger in Ms. Charles’ vehicle. Mr. Kedrick’s claim against the defendants was settled before trial.
 

 Following trial of the claims of Ms. Charles against defendants, the trial court rendered judgment in favor of Ms. Charles and against the defendants, and 12awarded
 
 *939
 
 Ms. Charles $30,000.00 in general damages and $8,300.00 in medical expenses. The court also awarded her court costs and legal interest from date of judicial demand until paid. In its judgment, the trial court limited Ms. Charles’ awards for general damages and medical expenses to those incurred through August 17, 2004.
 

 Ms. Charles now appeals the trial court judgment, arguing that the damages awarded are inadequate. Liability is not at issue in this appeal.
 

 On the issue of damages, the following testimony was presented at trial. Ms. Charles described how she felt neck and back pain immediately following the accident, and stated that she had not suffered injuries to those areas of her body prior to the accident. She testified as to the medical treatment she received for her injuries. Ms. Charles also testified as to treatment she received beginning in September 2005 in Lafayette, Louisiana, where she relocated as a result of Hurricane Katrina. She stated that the treatment she has received in Lafayette is for back injuries and anxiety. She admitted that her anxiety problems are unrelated to the October 2003 accident. She related her continuing back problems to the car accident. She denied telling the emergency room physician at West Jefferson Medical Center that she hurt her back bending a couple of days prior to that visit in April 2004. She testified that she has had chronic back pain since the October 2003 accident.
 

 The medical records show that Ms. Charles was taken to West Jefferson Medical Center emergency room after the accident. On October 13, 2003, she | -¡sought treatment from Dr. Norman Ott, an internist. Dr. Ott’s report shows that he evaluated Ms. Charles and made recommendations for her care. She followed Dr. Ott’s recommendations of therapeutic exercise, moist heat and cold packs for a few weeks, but never returned for a follow-up visit as scheduled. Ms. Charles also sought treatment from Dr. Sangeeta Parulekar within a month of the accident. He prescribed medication for Ms. Charles’s complaints of pain in her neck, left hip and low back. Dr. Parulekar continued to treat Ms. Charles until she asked to be discharged from his care on January 26, 2004. He discharged her in satisfactory condition, and gave her the option of returning for further treatment if she had recurring problems.
 

 Ms. Charles went to the West Jefferson Medical Center emergency room on April 5, 2004 complaining of low back pain. The records from that visit show that Ms. Charles reported injuring her back from an incident of bending over two to five days prior to her visit. She sought treatment on April 7, 2004 from Dr. F. Allen Johnston, a general practitioner and orthopedist, whose deposition was offered into evidence. At her initial visit, Ms. Charles complained of pain from her neck to her low back throughout her spine as a result of the October 10, 2003 motor vehicle accident. Dr. Johnston prescribed medication and physical therapy, and suggested that Ms. Charles use a TENS unit. He also ordered an MRI study of her neck and back, which revealed cervical spondylosis at C5-6 and C6-7 with foraminal stenosis at C5-6. He stated that these conditions probably predated the |4accident, but Ms. Charles was asymptomatic prior to the accident, according to her history.
 

 His opinion was that the accident caused the stenosis to become symptomatic. In Ms. Charles’s lower back, Dr. Johnston found that she had an L5-S1 annular tear with an associated disc herniation. He found that without any previous complaints of low back pain or a previous MRI, it is more probable than not that the tear and
 
 *940
 
 associated disc herniation are related to the accident.
 

 Dr. Johnston stated that an annular tear can have other causes besides trauma from a vehicular accident. He said that such a tear can also be caused by bending over and picking up a heavy suitcase. He stated that as a result of the L5-S1 disc herniation, Ms. Charles suffered a 10 percent whole person permanent physical impairment. Dr. Johnston referred Ms. Charles to Dr. Bernard A. Landry, a radiologist, for lumbar epidural steroid injections for her back pain. She received these treatments in June 2004. Dr. Johnston released Ms. Charles from treatment on August 17, 2004. Dr. Johnston related his treatment and the injuries he found in his treatment of Ms. Charles to the accident of October 10, 2003.
 

 At the conclusion of testimony, the trial court gave oral reasons for judgment. In those reasons, the trial court noted that Dr. Johnston’s treatment of Ms. Charles did not begin until April 2004, six months after the accident. At that time, Ms. Charles complained of neck and back pain with radiation. She had sought treatment at the West Jefferson Medical Center emergency room two days earlier with these same complaints. Dr. Johnston sent Ms. Charles for an MRI, |swhich showed an annular, or ring-shaped, tear. The trial court noted that the parties dispute the cause of the annular tear. Although it is undisputed that tears can occur from trauma, the court noted that Dr. Johnston said the trauma does not have to be from an accident, but can be caused by bending over and picking up a heavy object.
 

 The court stated that the record shows that Ms. Charles complained at her April 2004 emergency room visit that bending at home caused her back problems to flare up. Prior to that event, Ms. Charles had requested discharge from her prior treating physician as of January 26, 2004. As of that date, her prior treating physician discharged Ms. Charles with the option of returning should there be any recurring problems. The court noted that there is no indication of any further problems until Ms. Charles went to West Jefferson Medical Center emergency room in April 2004 and reported that she was bending a few days before her emergency room visit and suffered a recurrence of her back problems as a result thereof.
 

 After treatment and diagnostic testing by Dr. Johnston following the April 2004 emergency room visit, he discharged her from his care on August 17, 2004, with instructions for her to continue exercises at home and to return as needed due to the disc herniation in the lumbar spine. Dr. Johnston’s assessment of Ms. Charles is that she has a ten percent permanent impairment of the whole person. However, the court noted that at the time of Dr. Johnston’s discharge of Ms. Charles on August 17, 2004, she had only mild tenderness in the cervical area, a |(¾⅛11 active range of motion, non-tender lower back area, and her lower extremity strength and her neurovascular status was intact. The trial court found that Ms. Charles’ injuries were resolved as of that date.
 

 The trial court stated that she did not find Ms. Charles to be a credible witness. The court found that as a result of the accident, Ms. Charles sustained back and neck injuries for which she was treated until she requested discharge on January 26, 2004. She reinjured her back in April 2004, but the court found the City is still responsible for the subsequent treatment by Dr. Johnston to the extent that those treatments were related by Dr. Johnston to the accident. The trial court found that all of Ms. Charles’ complaints relative to the accident were resolved as of August 17, 2004. The court also found Dr. Lan
 
 *941
 
 dry’s treatment of Ms. Charles to be related to the accident, but found other medical treatment received subsequent to August 17, 2004 was unrelated to the accident. The court noted that most of the treatment received by Ms. Charles subsequent to August 17, 2004 was for problems other than back problems, such as allergies and anxiety.
 

 The trial court found that as a result of the accident, Ms. Charles sustained a ten month soft tissue injury that is somewhat chronic in nature. The court found defendant liable to Ms. Charles for $30,000.00 in general damages plus medical expenses for the treatment found to be related to the accident.
 

 On appeal, Ms. Charles argues that an award of $30,000.00 in general damages for the injuries suffered by her as a result of the accident is inadequate. 17She also argues that the trial court erred in limiting damages to those incurred only through August 17, 2004.
 

 Our review of the record establishes that the trial court’s conclusions as to the extent of Ms. Charles’ injuries incurred as a result of the October 2003 accident are reasonable. “The discretion vested in the trier of fact in the awarding of general damages is great, and even vast.”
 
 Youn v. Maritime Overseas Corp.,
 
 623 So.2d 1257, 1261 (La.1993). Considering the injuries suffered by Ms. Charles that have been related to the 2003 accident, and the medical treatment received as a result thereof, we do not find that the award of $30,000.00 in general damages to Ms. Charles is inadequate. Ms. Charles’s arguments are without merit.
 

 For the reasons stated above, we affirm the trial court judgment.
 

 AFFIRMED.