1DAVID S. GORBATY, Judge.
The Housing Authority of New Orleans (hereinafter HANO) appeals a judgment wherein it was held liable for the death of Phillip Williams, and ordered to pay damages to Mr. Williams’ widow and two daughters. HANO argues that the trial court erred in finding liability on its part, and in awarding excessive damages to the plaintiffs. For the following reasons, we affirm.
FACTS:
On August 6, 1995, Phillip Williams arrived at his wife’s home to visit. According to an eyewitness, before entering the house, located in the St. Bernard Housing Development, he kneeled down and leaned out of the opening in the third floor hallway. He then rose, pulled at the screen door, fell backwards, and tumbled out of the window opening. Mr. Williams hit an obstruction between the third and first floors, and then struck the pavement head *1070 first. He was transported to the Medical Center of Louisiana, where he was pronounced dead.
Mr. Williams’ widow, Johnnie Mae Williams, and his two daughters, Connie Williams Veal and Ginesta Williams, filed a petition for damages seeking | ¿to recover for Mr. Williams’ wrongful death. The petition alleged that HANO was strictly liable for creating an unreasonably dangerous condition. Alternatively, HANO was negligent for failing to repair the window and/or prevent persons from falling out of the opening. HANO answered the petition and filed a third-party demand against Mrs. Williams, the lessee of the apartment, for failing to notify HANO of the window’s condition, failing to place a barrier in the opening, and allowing the decedent to stand next to the opening.
After a bench trial, the district court found HANO one hundred percent at fault, and awarded Johnnie Mae $50,000, Connie $40,000, and Ginesta $25,000 for loss of love, affection and compensation.
DISCUSSION:
Assignments of Error 2, 3 and 4 are renewable pursuant to the manifest error/clearly wrong standard. Thus, unless this Court finds no reasonable basis in the record for the factual findings of the trial court, or that the factual findings are manifestly erroneous/clearly wrong, we must affirm. Rosell v. ESCO, 549 So.2d 840 (La.1989).
Assignment of Error No. 1:
This assignment of error has not been briefed by HANO, and is thus considered abandoned. Uniform Rules — Courts of Appeal 212.4.
Assignment of Error No. 2:
HANO contends that it was error for the district court to determine that the window was the cause of Mr. Williams’ fall. Specifically, it was error for the court 13to determine that the window opening was defective in that the sill was only 27 inches from the ground.
The reasons for judgment indicate that the court found that the large opening in the common area wall was a defect that created an unreasonable risk of harm. The only reference to the sill is that the 3 by 5 foot opening in the wall was 27 inches above the ground. Indeed, it is apparent from the evidence that because there was no window at all in the opening, there also was no sill.
Plaintiffs’ expert testified that the building code at the time of the accident required that a window, railing or some type of guard be placed in the opening to prevent someone from falling through. Thus, because the district court found that the unreasonable risk of harm was created by the large opening in an exterior wall of a third floor hallway, and not just the bottom height of the opening, we find the argument based on the height of the sill to lack merit.
Assignment of Error No. 3:
HANO asserts that it was error for the trial court to determine that the “window” was the cause of Mr. Williams’ death. It argues that in this case, cause in fact had two applications. First, the trial court had to determine that but for the defect, Mr. Williams would not have fallen from the window. Second, the court had to determine that the fall was the cause in fact of decedent’s injuries and death.
HANO again argues that plaintiffs’ own expert could not say with any degree of certainty that if the sill had been higher, it would have prevented Mr. Williams’ fall. We must again point out that trial court found that the opening in |4the wall was the defect, not the height of the sill. Regardless of what caused Mr. Williams to fall, the fact remains that but for the open *1071 ing in the wall, he would not have plummeted three stories to the ground.
HANO also argues that it was error for the trial court to determine that the fall from the window was a cause in fact of Mr. Williams’ death. Contrary to HANO’s assertion in the title of this assignment of error, the trial court did not find that the window caused the fall, but rather the defect in the building was a cause-in-fact of Mr. Williams’ death.
The trial court heard uncontradicted testimony from an eyewitness to the accident. Ms. Dionne Eley, who lived across the courtyard from Mrs. Williams’ apartment, testified that she witnessed the events before, during and after Mr. Williams’ fall. Ms. Eley was seated at her kitchen table talking on the telephone when she saw a man standing in the third floor hallway of the building across from hers. Ms. Eley testified that the man kneeled down at first, and leaned against the bottom of the opening. He then stood up, reached out, and pulled back on the screen door toward the opening. The man then tumbled from the window, hit an obstruction between the third floor and the ground, and then struck the pavement. HANO submitted no evidence to contradict Ms. Eley’s version of how the accident occurred.
Based on this record evidence, we cannot say that the trial court was manifestly erroneous/clearly wrong in its factual finding that the fall from the opening in the wall was the cause of Mr. Williams’ death.
[R Assignment of Error No. 4:
HANO argues that the trial court erred in concluding that the fall caused Mr. Williams’ death, absent any medical testimony. HANO contends that Mr. Williams could have suffered a stroke or heart attack causing him to stumble, or he could have been pushed from the window. HANO submits that plaintiffs’ testimony as to Mr. Williams’ pre-accident health is insufficient to prove he was in good health.
While it is accurate to state that plaintiffs’ did not offer any medical records to support their contentions, we must note that HANO likewise did not offer any evidence to disprove the plaintiffs’ testimony. Mr. Williams’ widow and two daughters all testified that they were unaware of any ailments, illnesses, or diseases suffered by Mr. Williams prior to this accident. Further, the eyewitness, Ms. Eley, did not witness the man having any type of seizure or attack, nor did she see anyone else in the hallway.
The medical records from the Medical Center of Louisiana indicate that Mr. Williams suffered a head trauma that lead to cardio-respiratory arrest.
Based on the above, we cannot say the trial court was manifestly erroneous/clearly wrong in this factual finding.
Assignment of Error No. 5:
In its last assignment of error, HANO asserts that the damage awards for loss of love, affection and compensation are excessive.
| fiIt is well settled that the trial court has vast discretion in setting the amount of general damages. Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993), and its progeny.
In its reasons for judgment, the trial court noted that the relationships between the deceased and his widow and daughters were not extremely close. However, the court also noted that the testimony supported the fact that Mr. Williams had attempted to rekindle his relationships with his family during the last years of his life. His widow testified that he visited with her at least three times a week, and although she would not allow him to live with her, the couple did enjoy each other’s companionship and engaged in intimate relations. *1072 Mrs. Williams testified that she lost her friend when her husband died.
Connie Williams Veal admitted that her father was not around when she was growing up, but testified that they began to develop a relationship when she was around 15 or 16. Ms. Veal was 35 at the time of trial. Mr. Williams had lived with Ms. Veal since 1987, and they frequently played dominoes and spades together. Ms. Veal testified that her father was close with her three children, and often took them to the playground or played ball with them. She did not expect her father to pay rent, but he insisted on buying things for her children whenever he could.
Ginesta Williams also testified that she had no real memories of her father from her childhood. She understood as an adult that her mother was her sole source of support as a child. Howéver, she too began a new relationship with her father at around age 15 or 16. She was 36 at the time of trial. Ginesta lived across |7the river from her sister, but often visited her father at her sister’s house. She stated that her father would sometimes call her on the telephone just to see how she was doing.
Based on this testimony, we find no abuse of the trial court’s vast discretion in making the general damage awards.
Accordingly, we affirm the judgment of the trial court. All costs of this appeal are assessed to HANO.
AFFIRMED.