623 So.2d 1257 (1993)
Hae Woo YOUN
v.
MARITIME OVERSEAS CORP. et al.
No. 92-C-3017.
Supreme Court of Louisiana.
September 3, 1993.
Rehearing Denied October 7, 1993.
Paul H. Due, Lewis O. Unglesby, Gordon R. Crawford, and Donald W. Price, Due, È, Smith, Caballero, Price & Guidry, Baton Rouge, for applicant.
Maurie D. Yager, Terriberry, Carroll & Yancey, and Gerard T. Gelpi, Norman C. Sullivan, and C. Gordon Starling, New Orleans, for respondent.
*1258 LEMMON, Justice.[*]
The sole issue before the court in this personal injury case is whether the court of appeal erred in reducing the trial court's award of general damages and in deleting the award of loss of found.
Plaintiff, a boatswain on a Liberian oil tanker, was injured aboard ship in May of 1989 when a steam valve on the port winch opened too quickly, causing the drum to spin and the cable to whip around the deck out of control. When plaintiff attempted to prevent the boom from falling on his shipmates, the cable wrapped around plaintiff's left thigh and crushed his leg.
Plaintiff filed this action against the vessel owner, the supplier of the crew that operated the vessel, and their insurer. After a bench trial, the judge found the defendants negligent in failing to repair the control lever known to be broken and to train the crew properly. Further finding plaintiff was not contributorily negligent, the judge awarded plaintiff damages in the amount of $1,703,864, itemized as follows:

Medical expenses, future $ 40,000
Past loss of net earnings 22,642
Future loss of net earnings 200,000
Past loss of found 3,748
Future loss of found 37,474
Past physical pain and suffering 200,000
Future physical pain and suffering 300,000
Past mental anguish and loss of enjoyment
of life 200,000
Future mental anguish and loss of
enjoyment of life 300,000
Disability and disfigurement 400,000
 __________
TOTAL $1,703,864

On defendants' appeal, the intermediate court affirmed the judgment in most respects, but reduced the damages award by almost one-half. 605 So.2d 187. The court reviewed plaintiff's injuries and resulting disability and disfigurement, concluding:
Even though Youn's injuries are undoubtedly severe, and permanent in some respects, we find that in certain areas, the trial court abused its discretion (on the high side) in awarding damages of 1.4 million dollars. Accordingly, we turn to comparable cases to determine the highest amount the trial court could have reasonably awarded in this case.
605 So.2d at 202. The court then reviewed comparable cases and cut the awards of $500,000 for past and future physical pain and suffering to $214,200, the awards of $500,000 for past and future mental anguish and loss of enjoyment of life to $214,200, and the award of $400,000 for disability and disfigurement to $171,600.[1] The court further deleted the $44,222 award for past and future loss of found because of failure of proof.
On plaintiff's application, this court granted certiorari to review the appellate court's reduction of the awards. 609 So.2d 239.
In plaintiff's accident in May of 1989, his left thigh received the full force of the falling boom. After brief unconsciousness, he endured great pain while waiting an hour for the helicopter to transport him to the hospital. Dr. David Davis, the vascular surgeon who became the treating physician, found plaintiff's foot cool and lacking a pulse and his thigh twice the normal size. Plaintiff had no sensation below his knee and was justifiably fearful when told he might lose his leg.
During the emergency surgery, Dr. Davis found that plaintiff's femoral artery, the primary blood supply to his leg, had been completely severed. The artery had to be reconstructed by surgery requiring an incision from plaintiff's groin almost to his ankle. The incision required skin grafting sixteen inches long and six inches wide.
Recovery was painful because of rejuvenating of the nerves and return of sensation. Development of an infection which required *1259 debridement further complicated the recovery.
Dr. Martin Bell, the reconstructive surgeon who described the muscle injury "as if muscle tissue had been squeezed out like toothpaste," found progressive necrosis of the muscle tissue and eventually had to remove two-thirds of the quadriceps muscle of the thigh. Dr. Bell also performed four additional surgeries under general anesthesia in May and June. The first surgery involved exploration, irrigation and debriding of the wound and secondary closure of the wound with cadaver skin. The second, which involved an abscess of the thigh, included removal of the staples from the skin grafts and exploration, incision and drainage of the hematoma. The third removed the cadaver skin and regrafted with plaintiff's own skin taken from his back. The fourth was for ischemic necrosis of the quadriceps muscle, consisting of removal of staples and retentive sutures, regrating of the knee, and exploration and evacuation of the hematoma and necrotic muscles of the thigh.
During the five weeks of hospitalization and surgical procedures, morphine and demerol were administered to help plaintiff endure the pain. Plaintiff's distress was worsened by the fact that he was alone in a foreign country with demoralizing injuries to his leg.
Plaintiff returned to Korea after his release from the hospital, but his hamstring muscle ruptured, requiring a sixth surgery. The hamstring muscle is still not functioning normally.
At trial, Dr. Davis described plaintiff's leg as consisting of bone, artery and skin, with all the muscle gone. The lack of muscle protecting the artery which supplies blood to the leg subjects plaintiff to significant risk of further serious and life threatening injury. The reconstructive surgeon testified that plaintiff's massive tissue defect, with skin graft basically overlying the bone, has the potential to break down. The surgeon recommended additional surgery to graft muscle mass onto the thigh.
Plaintiff's disability is permanent and likely to worsen. He walks with a limp and cannot walk any great distance. He cannot perform manual labor or heavy lifting, cannot be on his feet for extended periods of time, cannot climb stairs, and cannot do repetitive bending, stooping, squatting or kneeling. Plaintiff's doctors have assigned a permanent disability rating of thirty to thirty-eight percent. He has significant limitation of motion of the leg and of the knee, as well as scarring of the donor sites on the back and the opposite leg. Dr. Davis opined that his condition renders remote his chance for gainful employment in Korea.
At the time of trial, plaintiff still had pain, swelling, numbness, and lack of feeling in the leg. His physical condition is likely to worsen because vascular grafts have a limited life span and are more prone to development of blockage and arteriosclerosis than normal arteries.
Plaintiff suffers anxiety and mental pain over his grotesque disfigurement. His wife was "disgusted" when she saw his disfigured leg, and emotional problems have developed over this concern. Plaintiff is also understandably disturbed emotionally about his inability to fulfill his family responsibilities and the probability of future worsening of his physical condition.
The trial judge thoughtfully weighed these facts in fixing the amount of the awards. In reasons for judgment, the judge stated:
These awards are more than deserved. The plaintiff's left leg is nothing more than a stick connecting his thigh bone to his ankle. The scarring demonstrated in the pictures represents a river of gruesome tattoos which encompass and circle the entire leg, from groin to foot. Plaintiff's leg is embroidered with an ugly snake-like appearance. The Court has never seen such a dismaying scene. The Court was most impressed with plaintiff's sincerity and obvious heartache over his condition. Plaintiff's leg is useless for anything other than support. Dr. Davis described the skin over the bone as a paper thin leg. Plaintiff is in constant jeopardy of any intrusion into the leg, cutting the vessel, and placing his life at risk. There are no muscles, meat, nor fatty tissue in plaintiff's left thigh. Plaintiff's leg swells constantly, *1260 will never improve, and is expected to continue on a consistently downward course. Plaintiff will need future medical expenses because the vessels grafted in his leg will wear out over time. This will require at least two more surgeries based on plaintiff's life span. The Court does not see how plaintiff can accomplish any type of future work other than desk duty for which he appears both situationally and educationally unsuited. The plaintiff is totally and permanently disabled, can never return to any kind of physical activity, and must drag around with him, a constant reminder of this event. The impression from plaintiff's testimony, and viewing photographs of his existing condition, persuades the Court that plaintiff is a depressed, sorrowful, embarrassed, gentleman who had previously led an active, healthy, and vital existence. Plaintiff is described as a model patient who was most grateful to his American doctors for saving his life. Modern medicine can only do so much, however, and plaintiff's discussion of his wife's reaction when observing his leg upon his return home and to this date, persuades the Court that the disfigurement award is required. Plaintiff leads a life of embarrassment, pain and shame as a result of the injury. He will have lifetime problems. The independent medical exam ordered by the defendants reflects 90 to 100% strength loss in the left leg, and is described by their doctor, as a "near traumatic amputation of the left lower extremity." Plaintiff has a significant whole body impairment rating.
For over an hour plaintiff lay on the deck of the ship where he had worked with pride and dignity, fearful that he would never again stand on his own two feet. The obvious pain described by Capt. Choi was immense both while waiting for the helicopter, and at the hospital. Plaintiff was placed under the most powerful sedatives for most of his hospital stay. As recovery occurred, pain increased with the regeneration of the nerves. Today plaintiff has limited motion, no vitality, and no capacity to exercise or use the leg because of its delicate nature. He lives in constant apprehension of further injury. He has legitimate concerns over blood clots, loss of circulation and graft failures. He lives in Korea, and wet and cold weather create additional problems in his thigh area which the doctors describe as expectable and severe.
In Reck v. Stevens, 373 So.2d 498 (La.1979), this Court commented on appellate review of general damage awards and on the "much discretion" in fixing damages accorded to trial courts by La.Civ.Code art. 1934(3)(1870).[2] The decision pointed out that the role of an appellate court in reviewing general damages is not to decide what it considers to be an appropriate award, but rather to review the exercise of discretion by the trier of fact. Each case is different, and the adequacy or inadequacy of the award should be determined by the facts or circumstances particular to the case under consideration.
In Reck, this court disapproved the appellate court's simply reviewing the medical evidence and then concluding that the award for those injuries was excessive, without taking into consideration the particular effect of the particular injuries on the particular plaintiff. This court further disapproved of the use of a scale of prior awards in cases with generically similar medical injuries to determine whether the particular trier of fact abused its discretion in the awards to the particular plaintiff under the facts and circumstances peculiar to the particular case. The initial inquiry is whether the award for the particular injuries and their effects under the particular circumstances on the particular injured person is a clear abuse of the "much discretion" of the trier of fact. Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963); Ballard v. National Indem. Co. of Omaha, Neb., 246 La. 963, 169 So.2d 64 (1964); Lomenick v. Schoeffler, 250 La. 959, 200 So.2d 127 (1967). Only after such a determination of an abuse of discretion is a resort to prior awards appropriate and then for the purpose of determining the highest or lowest point which is reasonably within that discretion. Coco v. Winston Industries, Inc., *1261 341 So.2d 332 (La.1976); Bitoun v. Landry, 302 So.2d 278 (La.1974); Spillers v. Montgomery Ward & Co., 294 So.2d 803 (La.1974).
The standard for appellate review of general damage awards is difficult to express and is necessarily non-specific, and the requirement of an articulated basis for disturbing such awards gives little guidance as to what articulation suffices to justify modification of a generous or stingy award. Nevertheless, the theme that emerges from Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963) through Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976), and through Reck to the present case is that the discretion vested in the trier of fact is "great," and even vast, so that an appellate court should rarely disturb an award of general damages. Reasonable persons frequently disagree about the measure of general damages in a particular case. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award.
In the present case the court of appeal apparently believed that the general damage award for a leg loss or injury could not exceed $600,000. In reaching this conclusion, the court considered the medical injuries, but apparently did not consider the terrified condition of plaintiff while on the deck waiting for a helicopter after a near traumatic amputation when he had attempted to protect his shipmates; the physical pain and mental agony of the surgeries and treatment while alone in the hospital in a foreign country; the "grotesque" appearance of the leg (as characterized by the reconstructive surgeon) consisting only of bone, artery and skin; the justified fear of worsening of the already fragile condition and of further injury or death from otherwise innocuous physical contact; the obvious concern over the inability to fulfill family responsibilities because of the disability that certainly will require continuing medical care and probably will worsen; the devastating effect of the disability and disfigurement on plaintiff's marital relationship and personal esteem; and the mental anguish and anxiety naturally accompanying the above considerations and the continuing swelling, numbness, pain and suffering.
When these and other factors are properly considered under the standards discussed above, we cannot say that the trial judge abused his discretion in fixing the generous awards of general damages. The awards are not obviously the result of passion or prejudice, and they bear a reasonable relationship to the elements of the proved damages. Many rational triers of fact could have decided that a lower award is more appropriate, but we cannot conclude from the entirety of the evidence in this record, viewed in the light most favorable to the prevailing party in the trial court, that a rational trier of fact could not have fixed the awards of general damages at the level set by the trial judge or that this is one of those "exceptional cases where such awards are so gross as to be contrary to right reason." Bartholomew v. CNG Producing Co., 832 F.2d 326 (5th Cir. 1987). We accordingly reinstate that portion of the judgement of the trial court relating to general damages.
As to the trial judge's award for loss of found, the appellate court held that plaintiff had not established the value of the loss and set aside the award.
"Found" is an admiralty term which describes the element of damages representing the value of the living expenses provided to a seaman by his employer as a condition of employment while aboard ship. Found generally includes expenses for food, lodging and clothing. Frank L. Maraist, Admiralty in a Nutshell 194 (2d ed. 1988).
Plaintiff clearly suffered this loss, inasmuch as he will never again receive these sums from his employer while aboard ship. The only issue is the precise value of the loss.
In Jordan v. Travelers Ins. Co., 257 La. 995, 245 So.2d 151 (1971), the plaintiff had failed to introduce income tax returns and other earnings records, but had testified regarding his employment history. The lower courts denied his claim for loss of earnings because of failure of proof. This court held *1262 that plaintiff had proved that he, more probably than not, had sustained some loss of pretrial and future earnings, and proceeded to fix an award based on the less-than-perfect evidence.
In Stiles v. K-Mart Corp., 597 So.2d 1012 (La.1992), plaintiff proved that he would require future medical treatment, but did not present expert testimony as to the cost of the treatment. The court of appeal deleted the trial court's award for this item of damages, but this court reinstated the award, noting:
When the record establishes that future medical expenses will be necessary and inevitable, the court should not reject an award of future medical expenses on the basis that the record does not provide the exact value of the necessary expenses, if the court can examine the record and determine from evidence of past medical expenses and other evidence a minimum amount that reasonable minds could not disagree will be required. La. Code of Civ. Proc. art. 2164.
597 So.2d at 1013.
Here, the trial judge set the award for loss of found at $10 per day on the basis of evidence that plaintiff's employer had provided meals, lodging and clothing to him daily and the trial court's inference that these daily items would cost at least that amount. Moreover, awards for loss of found in other reported decisions have far exceeded that daily amount. We conclude that the award of $10 per day was supported and should have been upheld.
Accordingly, the judgment of the court of appeal is set aside in part, and the awards by the trial court for general damages and loss of found are reinstated.
NOTES
[*] Pursuant to Rule IV, Part 2, ß 3, Watson, J. was not on the panel which heard and decided this case. See footnote in State v. Barras, 615 So.2d 285 (La.1993).
[1] The court thus reduced the total award of general damages from $1,400,000 to $600,000.
[2] The same discretion is mandated today by La. Civ.Code art. 1999.