hKNOLL, Judge.
Plaintiff appeals as inadequate the award of general damages for injuries suffered as a result of an automobile accident. Defendants answered the appeal and assigned as error the trial court’s award of future medical expenses and the exeessiveness of the award for loss of consortium to the accident victim’s husband. For the following reasons, we amend to increase the general damage award and affirm the judgment of the trial court.
FACTS
On January 18, 1993, LeQuita Harper was driving her 1992 Mercury Cougar on Highway 14 in Lake Charles, Louisiana. She was accompanied by her mother, Druesilla Bailey, and her son, Tommy J. Harper. The Harper vehicle was involved in a violent collision with a pickup truck driven by Jeanette McDaniel and owned by Isher employer, Venture Transport, Inc. Both LeQuita Harper and Druesilla Bailey were riding in the front seat at the time of the accident, and both were thrown forward into the windshield and dashboard with great force. The windshield shattered when it was struck by Mrs. Harper’s head.
Immediately after the accident, Tommy J. Harper, who had been riding in the back seat, tried to help his mother exit the Cougar, but she was dazed and was unable to move her right arm. When the paramedics arrived, Mrs. Harper was immobilized on a backboard and taken to Lake Charles Memorial Hospital.
Dr. William F. Foster, Jr., a neurosurgeon, examined Mrs. Harper in the emergency room. Dr. Foster noted that Mrs. Harper had been unconscious and felt that she had suffered a concussion. His examination revealed paralysis of Mrs. Harper’s right arm. X rays taken in the emergency room revealed that Mrs. Harper had suffered a broken neck, or more specifically, a nondisplaced fracture of the transverse process of the C-7 vertebra. Although Mrs. Harper’s spinal cord was not severed in the accident, Dr. Foster felt that it may have been bruised. Mrs. Harper did regain sensation in her right arm. Although Mrs. Harper was released after five or six days in the hospital, the record shows she had a long and painful journey to recovery. Her injuries will be detailed later in this opinion.
*1138 The Harpers and the Baileys filed suit against Jeanette McDaniel, her employer, Venture Transport, Inc., and its insurer, Homestead Insurance Company. The defendants stipulated to 100% liability for the accident and the issue of damages was tried by a jury between April 24th and April 27th, 1995. At trial’s end, the jury made the following awards to Mrs. Harper: $72,608.69 for past medical expenses; $25,000 for future medical expenses; $19,000 for past lost earnings; $8,345 for future lost earnings; $12,000 for disability; and $175,000 for past and future pain andjjsuffering, and loss of enjoyment of life. Tommy L. Harper, LeQuita’s husband, was awarded $27,500 for loss of consortium.
Mrs. Harper has appealed the sufficiency of the award of $175,000 for pain, suffering, and loss of enjoyment of life. Defendants appeal, asserting that the award of $25,000 for future medical expenses is not supported by the record. Defendants further specify as excessive the award of $27,500 to Tommy L. Harper for loss of consortium.
GENERAL DAMAGES
According to the principles handed down by the Louisiana Supreme Court in Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993), cert. denied, — U.S. —, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994), the record must clearly reflect an abuse of the trial court’s discretion before a general damage award can be disturbed by an appellate court. In making this initial determination, the issue before the appellate court is not whether a different award may have been more appropriate, but rather whether the trial court’s award can be reasonably supported by the record. Under Youn, the initial inquiry is whether the award for the particular injuries and their effects under the particular circumstances on the particular injured person is a clear abuse of the much discretion of the trier of fact. Only after such an abuse of discretion has been noted will a resort to prior awards be appropriate and then only for the purpose of determining the highest or lowest point which is reasonably within that discretion. Youn, 623 So.2d at 1260.
In order to determine whether the award of $175,000 for pain, suffering, and loss of enjoyment of life is an abuse of the discretion of the trial court, a detailed analysis of the plaintiffs injuries is required.
UThe record reflects that before the accident Mrs. Harper enjoyed an independent and active rural lifestyle. She ran her own beauty shop, assisted her husband in his trucking business, and attended to her family’s household needs. She lived on a lake and described herself as an outdoor person. Activities that she regularly enjoyed prior to the accident included fishing, hunting, bowling, playing softball, gardening, and canning the harvest of her garden. Since the accident, she has been unable to participate in any of these activities.
The record reflects that Mrs. Harper enjoyed a caring and satisfying home life with her husband and sons. She met her husband in the sixth grade, and they married shortly after LeQuita’s graduation from high school. They have been married for over 25 years, and they have two sons. The record reflects that Mrs. Harper was extremely active around the house and participated in her sons’ school and extracurricular activities. Since the accident, she has been unable to assist in chores around the house, and she has been unable to engage in a physical relationship with her husband. The great physical and mental pain experienced by Mrs. Harper has shortened her temper and has strained her relationship with her family.
After graduating from beauty school in 1979, Mrs. Harper opened her own beauty shop near her home. She had always wanted to be a beautician, like her mother, and she never worked in any other field. The record reflects that the loss of her ability to work in her shop has had an effect on Mrs. Harper’s life beyond the mere loss of income. Her clients were her friends and the beauty shop was the focus of Mrs. Harper’s social life. The loss of her ability to work in her beauty shop has had an extremely negative effect on Mrs. Harper’s sense of self-worth.
Mrs. Harper was healthy before the accident. Her only prior hospitalizations were for an appendectomy and for the birth of her two sons. She testified that before_ [gthe *1139 accident, doctors were simply not a part of her life. This changed greatly after the accident on January 18, 1993. Although her medical records are too extensive to permit a detailed analysis here, the following summary of the medical evidence illustrates the extent and gravity of her injuries and her sufferings.
After Mrs. Harper was admitted to the emergency room, she was examined by Dr. William F. Foster, Jr., a neurological surgeon at Lake Charles Memorial Hospital. Dr. Foster diagnosed a concussion, a bruised spinal cord, and a probable strain of the nerves in Mrs. Harper’s brachial plexus. Although a CT-sean of Mrs. Harper’s head was normal, X rays revealed a fracture in Mrs. Harper’s C-7 vertebra. Mrs. Harper remained in the hospital for almost a week. Because of her neck injury, she was fitted with a firm neck brace called a Philadelphia collar. She was required to wear this collar constantly until her fractured vertebra healed.
Mrs. Harper began to experience extreme pain following the accident. Subsequent testing revealed a herniated disc at C6-7, a stretch injury to the nerves in her neck, and a carpal tunnel injury. Dr. Foster also strongly suspected that Mrs. Harper was suffering from thoracic outlet syndrome (T.O.S.).
Dr. Ronald S. Kober, a thoracic surgeon in Lake Charles agreed with Dr. Foster’s diagnosis of T.O.S. He explained that T.O.S. is caused by compression of nerves and blood vessels against the first rib, just below the patient’s collarbone, causing severe pain. He further noted that the surgery to relieve this pain required the removal of the first rib and its attached muscles and ligaments. The extreme nature of the surgery calls for its use only as a last resort, when the patient has not responded to any other treatment, and when the pain has had an extreme impact on personal, social, and professional facets of a patient’s life.
|fiOn August 17, 1993, Dr. Foster performed a cervical microdisceetomy at C6-7 and C5-6. In addition, he performed carpal tunnel surgery under the same anesthesia. Although Dr. Foster classified the surgeries as successful, Mrs. Harper continued to experience extreme pain.
Dr. Harold C. Urschel, a thoracic neurosurgeon at Baylor University Medical Center and a respected pioneer in the diagnosis and treatment of T.O.S., examined Mrs. Harper at his clinic in Dallas in November 1994. After positive physical examinations and nerve conduction studies in both of Mrs. Harper’s arms, Dr. Urschel confirmed that Mrs. Harper was suffering from bilateral T.O.S. Since her right side was worse than her left side, Dr. Urschel removed the first rib on Mrs. Harper’s right side. Dr. Ur-schel’s physical findings during the operation confirmed the diagnosis of T.O.S. Nevertheless, this ease came to trial before a complete evaluation of the operation’s success could be made.
Mrs. Harper was examined by Dr. Watts R. Webb, a thoracic surgeon in New Orleans, at the request of the defendants. Dr. Webb agreed with Dr. Urschel’s diagnosis and treatment.
Because of her problems relating to the pain she was experiencing, Mrs. Harper was referred by her attorney to Dr. Kip Patterson, a clinical psychologist in Lake Charles. Dr. Patterson stated that Mrs. Harper was having great difficulty coping with the pain and that she was experiencing grief from the loss of her previous lifestyle. He further diagnosed Mrs. Harper as suffering from chronic pain, clinical depression, and possibly post traumatic stress disorder.
A common denominator throughout the medical and lay testimony adduced at trial was the extreme nature of the pain experienced by Mrs. Harper. Mrs. Harper experienced simultaneous compression of her nerves in her cervical spine, thorax and |7carpal tunnel. The medical testimony revealed that the compression of her nerves at three places at once had a compound effect on the pain. Dr. Foster stressed the complex nature of Mrs. Harper’s injuries and their compound effect on the pain she was experiencing. In his deposition, Dr. Urschel explained the synergistic nature of the pain resulting from a complex injury like the one suffered by Mrs. Harper: “Any compression *1140 that you have on the nerves is not just additive, but it’s synergistic. It’s not just one plus one, it’s one plus four.” None of the physicians felt that Mrs. Harper was exaggerating her symptoms; in fact, it was Dr. Patterson’s opinion that Mrs. Harper was under-reporting her symptoms.
Dr. Kober described the type of pain associated with T.O.S.:
I try to make people who haven’t had this understand that these people are suffering by imagining that you had a crick in your neck or imagining what it was like when you did have a crick in your neck. You know that that’s a very severe pain; ... And, you know, it can make a grown man cry. It’s just a very severe pain.... These people live in that same type of agonizing pain except it’s not just in their neck. It’s in their neck, it’s in their shoulder, it’s in their upper back, it’s in their upper chest, it’s in their upper arm, and they just can’t get rid of it because it’s a never ending cycle of nerve irritation and muscle spasm trying to get those nerves up off the surface of that rib.
Nevertheless, it is sometimes difficult to determine the real extent of pain suffered by a plaintiff from a reading of a cold record. The technical and medical descriptions of such a necessarily subjective thing as pain are often inadequate. We feel that the following testimony of Mrs. Harper speaks volumes about her experiences between the accident and her trial.
The accident and — it did something to me. It took everything I had. You understand, your mind is a — it can play so many tricks on you. But I was — everything was took away from me. I might as well been killed. And honest to God I wish I had been; but anyway, when you take somebody’s life, you take their car, you take their income, you take their future.... I am not a doctor person. This was all just so new to me. The pain was so new to Rme. Maybe not new to anybody else that had ever had anything; but it was new to me. I never had pain, not like that.
Mrs. Harper testified that she has great difficulty sleeping and that she is unable to sleep in her bed. She stated that she could only sleep for a few hours a night in a recliner in her living room. Mrs. Harper testified that her pain has been constant since the accident, and that although some days were better than others, she has not been pain free since January 18, 1993. Her thoracic condition compresses major blood vessels and nerves in her upper extremities, causing numbness, sensitivity to temperature change, loss of motor function, and discoloration in her arms and fingers.
It is apparent to this court that Mrs. Harper’s injuries have had a profound impact on every aspect of her life. The record overwhelmingly supports that she has suffered greatly, both mentally and physically, and will in the future. Based upon our review of the facts and circumstances peculiar to this particular case, we find that the award of only $175,000 for pain, suffering, and loss of enjoyment of life since January 18, 1993, a period in excess of three years, to be an abuse of the much discretion of the trier of fact. No monetary figure can truly compensate the plaintiff for the permanent effect of her injuries on her life. Nevertheless, after reviewing awards of similar cases to determine the lowest point reasonably within that discretion, we feel that the lowest amount which the trial court could have awarded Mrs. Harper for physical and mental pain and suffering, past and future, and loss of enjoyment of life is $350,000. We hereby increase the award for pain, suffering, and loss of enjoyment of life to that amount.
IsFUTURE MEDICAL
Defendants assign as error the trial court’s award of future medical expenses of $25,000, asserting that there was no medical testimony presented to prove the need for additional surgery.
While it is true that Dr. Urschel stated that the need for a second rib resection surgery was speculative, it is apparent to this court that Dr. Urschel was simply withholding his opinion on future surgery until he had a chance to evaluate the first surgery. Dr. Urschel testified that he conducts two follow up examinations on his patients: one three weeks after surgery, and one three months *1141 after surgery. Trial in this case was held within three months of Mrs. Harper’s rib resection surgery, before Dr. Urschel could make a complete evaluation as to its success. This assignment is more agrumentative rather than a serious attack on Mrs. Harper’s future medical expenses and diagnosis.
Dr. Urschel diagnosed Mrs. Harper with bilateral T.O.S. Objective tests confirmed that while her right side was worse than her left side, both sides were affected. Defendants’ physician, Dr. Webb agreed with Dr. Urschel’s diagnosis. Because of the invasive nature of the surgery, only one side is done at a time. Although surgery was performed on the right side first since the right side was more symptomatic, surgery was never ruled out for the left side.
We find that there is ample evidence in the record to justify the award of future medical expenses in this case.
LOSS OF CONSORTIUM
Defendants further contend that the jury abused its much discretion in awarding $27,500 to Tommy L. Harper, Mrs. Harper’s husband, for loss of consortium. After |i0a thorough review of the record, we note no such abuse of discretion in the loss of consortium award.
The record reflects that the marital relationship between Tommy L. Harper and his wife was severely disrupted by the injuries sustained by Mrs. Harper. Mrs. Harper was unable to assist her husband in the household chores. She was unable to engage in any physical relations with her husband. She was also unable to participate in the recreational activities that she had shared with her husband before the accident. The record further reflects that Mrs. Harper’s constant pain and resulting depression further strained her relationship with her husband.
For the foregoing reasons, the judgment of the trial court is amended to reflect an award of $350,000 for physical and mental pain and suffering, past and future, and loss of enjoyment of life. Otherwise, the judgment of the trial court is affirmed. Costs of this appeal are assessed to the defendants.
AFFIRMED AS AMENDED AND RENDERED.
SAUNDERS, J., concurs in part and dissents in part with written reasons.