STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

04-1547


CLYDE RAYBURN

VERSUS

SHIRLEY PONTHIEUX, ET AL.


************

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT,
PARISH OF RAPIDES, NO. 214,441,
HONORABLE GEORGE C. METOYER, JR., DISTRICT JUDGE

************

JIMMIE C. PETERS
JUDGE

************

Court composed of Chief Judge Ulysses Gene Thibodeaux and Judges John D. Saunders and Jimmie C. Peters.


AFFIRMED.


Madeline J. Lee
Bolen, Parker & Brenner, LTD
Post Office Box 11590
Alexandria, LA  71309-1590
(318) 445-8236
COUNSEL FOR PLAINTIFF/APPELLEE:
    Clyde Rayburn

Michael T. Johnson
Johnson & Siebeneicher
Post Office Box 648
Alexandria, LA  71309
(318) 484-3911
COUNSEL FOR DEFENDANTS/APPELLANTS:
    Rapides Parish School Board and Shirley Ponthieux

PETERS, J.

This litigation arises from an automobile accident which occurred in Alexandria, Louisiana, on May 2, 2003. The defendants, Shirley Ponthieux and the Rapides Parish School Board (School Board), appeal a trial court judgment rendered in favor of the plaintiff, Clyde Rayburn, awarding Mr. Rayburn $85,000.00 in general damages and $3,450.15 in medical expenses as compensation for the injuries he sustained in the accident. For the following reasons, we affirm the trial court judgment in all respects.

## DISCUSSION OF THE RECORD

The events giving rise to the litigation are not in dispute. On May 2, 2003, Mr. Rayburn stopped his pickup truck at an intersection and, as he waited for the traffic signal to change from red to green, was struck from the rear by a school bus driven by Ms. Ponthieux and owned by the School Board. He claims that, as a result of the impact, he sustained injuries to his right shoulder, neck, and lower back.

At the July 27, 2004 trial on the merits, the defendants stipulated to liability. In support of his injury claims, Mr. Rayburn testified and introduced the deposition testimony of Dr. Todd Drury, an Alexandria, Louisiana orthopedic surgeon; the medical records of Dr. Robert K. Rush, an Alexandria, Louisiana preventive and occupational medicine physician; the medical records of the Louisiana Physical Therapy Center; and the medical bills associated with his treatment. In response to those offerings, the defendants introduced the deposition testimony of Dr. Douglas Gamburg, another Alexandria, Louisiana orthopedic surgeon.

Mr. Rayburn, an eighty-three-year-old widower, testified that at the time of impact he had his seat belt engaged. Despite that fact, according to Mr. Rayburn, the impact tossed him about the cab of the truck and pushed the truck partially into the

intersection. By the time the matter came to trial, Mr. Rayburn's neck and lower back complaints were resolved, but he continued to have difficulty with his right shoulder. According to Mr. Rayburn, prior to the accident he had cut his own firewood, planted and harvested his own garden, tended to his own yard, and performed almost any physical task he desired. He testified that the persistent right shoulder pain now precludes most physical activities. Specifically, he suffers pain anytime he attempts to raise his right arm over his head or to use his right hand to pick up anything or push anything to the side.

When questioned concerning his medical history, Mr. Rayburn acknowledged that he suffered from diabetes and emphysema prior to the accident, but he denied sustaining any prior accidents or injuries. More specifically, he denied having any difficulties with his right shoulder in the years before the accident other than one incident approximately ten years earlier. At that time, he did suffer some right shoulder pain and, believing he was suffering from arthritis, sought medical attention at a veterans administration hospital. According to Mr. Rayburn, the medical personnel at the hospital gave him an injection in the shoulder, which gave him immediate and permanent relief. After receiving the injection, he immediately returned to his employment as an operator of heavy equipment.

Mr. Rayburn did not immediately seek medical attention for the injuries he sustained in the May 2, 2003 accident. Instead, he rode to his Hineston, Louisiana residence in the cab of the wrecker that transported his disabled vehicle. He continued to experience pain from the injuries sustained in the accident and, two days after the accident, saw Dr. Rush. Sometime later, Dr. Rush referred Mr. Rayburn to

2

Dr. Drury, who treated the patient for the right shoulder injury. At the request of the defendants, Mr. Rayburn also saw Dr. Gamburg.

Dr. Rush's medical records revealed that, based on the history presented by Mr. Rayburn and the physical examination performed on May 5, 2003, the doctor initially concluded that Mr. Rayburn suffered cervical and lumbar strains, a right sacroiliac strain, and a head injury in the accident. Dr. Rush recommended a physical therapy regime, which was performed at the Louisiana Physical Therapy Center in Alexandria between May 6 and July 17, 2003. Mr. Rayburn participated in seventeen physical therapy sessions during that period.

On August 15, 2003, Dr. Drury first saw Mr. Rayburn. After taking a history from the patient and after performing a physical examination, Dr. Drury concluded that Mr. Rayburn had sustained a complete rotator cuff tear in the accident. An MRI performed on that day confirmed Dr. Drury's conclusion.

Dr. Drury saw Mr. Rayburn on two additional occasions, September 22 and October 23, 2003. The doctor testified that when he saw Mr. Rayburn in September, the patient reported that he had improved to some extent but continued to suffer right shoulder pain on a regular basis. Dr. Drury attempted to relieve the pain with an injection in the right shoulder, but that treatment provided no relief. When he saw the patient in October, Mr. Rayburn's condition had not changed.

According to Dr. Drury, the MRI results revealed a completely torn rotator cuff in the right shoulder which had the appearance of a chronic complete tear. By describing the tear as "chronic," Dr. Drury stated that the initial tear occurred six months or more before his examination, and not within the three-month period since the accident. In explaining why Mr. Rayburn's complaints began only after the

3

accident of May 2, 2003, Dr. Drury suggested that Mr. Rayburn's rotator cuff had been partially torn before the accident and that the mechanics of the accident completed the process. He acknowledged that a physician could not be absolutely positive that the complete tear did not exist prior to the accident absent the results of MRIs taken immediately before and after the accident. According to Dr. Drury, without such test results, a physician must rely on the history given by the patient to determine whether the complete tear predated the accident. Accepting Mr. Rayburn's history of no prior complaints, Dr. Drury concluded that more likely than not the final complete tear occurred as a result of the May 2, 2003 accident.

When asked about the prognosis for the injury, Dr. Drury testified that Mr. Rayburn was not a candidate for surgery and that his condition was permanent. This condition, according to Dr. Drury, will cause Mr. Rayburn to have difficulty lifting his arm over his head or reaching out to pick up anything. As an example, Dr. Drury suggested that it would be difficult for Mr. Rayburn to lift something as light as a gallon of milk from a refrigerator. He did testify, however, that Mr. Rayburn would not be in continuous pain but that he would have some good months and some bad months.

Dr. Gamburg examined Mr. Rayburn on July 15, 2004, or thirteen days before trial. After examining Mr. Rayburn and reviewing his past medical records, Dr. Gamburg agreed that Mr. Rayburn suffered from a chronic rotator cuff tear, but he concluded that the complete tear predated the accident. However, in reaching this conclusion, Dr. Gamburg stated that it was a "mystery" to him why Mr. Rayburn had not had continuing problems with his right shoulder before the accident.

4

The trial court stated in its reasons for judgment that Mr. Rayburn "was very truthful in his testimony" and that the preexisting rotator cuff tear had not hindered his activities or lifestyle. It was only after the accident, according to the trial court, that Mr. Rayburn's lifestyle changed for the worse. In reaching these factual conclusions, the trial court awarded Mr. Rayburn $85,000.00 in general damages and $3,450.15 in medical expenses. The trial court signed a written judgment to this effect, and the School Board perfected this appeal.

**OPINION**

In their sole assignment of error, the defendants assert that the trial court awarded excessive general damages, particularly given the fact that Mr. Rayburn had a preexisting condition, was not a candidate for surgery, and would suffer only during the "bad months." They suggest that $35,000.00 would adequately compensate Mr. Rayburn for his injuries.

While the trial court, in its reasons for judgment, did not specifically state that it accepted Dr. Drury's conclusion that Mr. Rayburn had a preexisting partial rotator cuff tear that became a complete tear as a result of the accident, it is clear from the reasons expressed that the trial court did so. The trial court's factual findings will not be disturbed absent manifest error. *Stobart v. State, Through Dep't of Transp. & Dev.*, 617 So.2d 880 (La.1993). It is obvious from the defendants' brief on appeal that they recognize the burden placed on them by *Stobart* and its progeny as they concede that the trial court accepted Dr. Drury's conclusion and do not contest that factual finding. Instead, they merely present this court with a list of cases with lower awards for general damages for what they assert are similar injuries.

5

In considering whether an award of general damages is excessive or inadequate, we are guided by the supreme court's decision in *Youn v. Maritime Overseas Corp.*, 623 So.2d 1257 (La.1993), *cert. denied*, 510 U.S. 1114, 114 S.Ct. 1059 (1994). In that decision, the supreme court noted that "the discretion vested in the trier of fact is 'great,' and even vast, so that an appellate court should rarely disturb an award of general damages." *Id.* at 1261. Under *Youn* and its progeny, "[t]he initial inquiry is whether the award for the particular injuries and their effects under the particular circumstances on the particular injured person is a clear abuse of the 'much discretion' of the trier of fact." *Id*. at 1260. Only after the initial inquiry is answered in the affirmative should the appellate court increase or reduce the award. *Id.* In making the initial inquiry, the reviewing court should not use "a scale of prior awards in cases with generically similar medical injuries to determine whether the particular trier of fact abused its discretion in the awards to the particular plaintiff under the facts and circumstances peculiar to the particular case." *Id.* Such prior awards should be considered only after the reviewing court concludes that there has been an abuse of discretion. *Id.* Even then, the reviewing court may use prior awards only to determine "the highest or lowest point which is reasonably within [the trial court's] discretion." *Id.*

Thus, in this case, the undisputed facts on appeal are that Mr. Rayburn suffered a neck and back injury in the accident, both of which were resolved before trial. Additionally, the accident caused a preexisting partial rotator cuff tear of the right shoulder to completely tear. The preexisting condition had no effect on Mr. Rayburn's physical activities, but the resulting complete tear has limited his physical activities drastically. Not only can he not chop his own firewood, or plant and

6

harvest his garden, or tend to his yard, but also he cannot even retrieve a carton of milk from the refrigerator without suffering pain. Mr. Rayburn's condition cannot be corrected by surgery and is permanent. While the generalized pain may wax and wane, each time he raises his right arm or attempts to adjust something with that arm, he suffers immediate pain.

We do conclude that the general damage award constitutes a significant award for the injuries sustained by Mr. Rayburn. However, considering the vast discretion given to the trier of fact in awarding general damages, and taking into account the particular injuries suffered by Mr. Rayburn and the effect those injuries had on him, we do not find that the trial court abused its discretion in awarding him $85,000.00 in general damages.

## DISPOSITION

For the foregoing reasons, we affirm the trial court judgment in all respects. Pursuant to La.R.S. 13:5112, we tax trial and appellate costs totaling $703.44 to Shirley Ponthieux and the Rapides Parish School Board.

**AFFIRMED.**

7