# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

### 12-1153


RHETT HAYES

VERSUS

BRITTANY MARIE GUNN


\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
TWELFTH JUDICIAL DISTRICT COURT
PARISH OF AVOYELLES, NO. 2010-5740-B
HONORABLE WILLIAM BENNETT, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**JIMMIE C. PETERS
JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Sylvia R. Cooks, John D. Saunders, and Jimmie C. Peters, Judges.

Cooks, J., dissents and assigns written reasons.


**AFFIRMED.**


**Ricky L. Sooter**
**Provosty, Sadler, et al.**
**P. O. Box 1791**
**Alexandria, LA 71309-1791**
**(318) 445-3631**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Brittany Marie Gunn**

**Charles A. Riddle, III**
**P. O. Box 1200**
**Marksville, LA 71351**
**(318) 253-6587**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
    **Rhett Hayes**

**PETERS, J.**

This immovable property dispute has as its origin an oral agreement between Diane McNeal Bordelon and her son-in-law and daughter, Rhett and Chantelle Hayes, wherein Ms. Bordelon gave the couple permission to construct part of a covered carport on her land and allowed them to use her land as a driveway to access the carport. Brittany Gunn, a subsequent owner of Ms. Bordelon's immovable property, refused to honor the oral agreement and demanded that Mr. and Mrs. Hayes remove that portion of the carport encroaching on her land, and furthermore, that they cease using her property as a driveway. Litigation over the rights of the parties followed Mr. and Mrs. Hayes' refusal to comply with Ms. Gunn's demands. Mr. Hayes[1] now appeals the trial court's judgment rejecting his claims for relief, recognizing Ms. Gunn as the owner of the property at issue free and clear of any encumbrance, and ordering Mr. Hayes to remove the encroaching part of the covered carport and cease using the driveway. For the following reasons, we affirm the trial court judgment and remand the matter to the trial court for the determination of the issue of damages.

## DISCUSSION OF THE RECORD

The facts giving rise to this litigation are not seriously disputed. Diane McNeal Bordelon acquired ownership of Lots 13 and 14 of the Oren Lamartiniere Subdivision in Avoyelles Parish, Louisiana in 1999. In February of 2003, she transferred Lot 14 to Rhett and Chantelle Hayes. The couple moved a mobile home onto Lot 14 and began constructing a covered carport as an attachment to

---

[1] The record reflects that sometime before the filing of the initial suit giving to this appeal, Rhett and Chantelle Hayes physically separated and began divorce proceedings. In October of 2010, or after suit was filed, the couple executed a community property agreement wherein Mr. Hayes was given title to Lot 13. On March 25, 2011, Mrs. Hayes executed a document assigning all of her interest in the disputed property encroaching onto Lot 14 to her former husband. Thus, Mrs. Hayes is not a party at interest in this litigation.

their new home. Because they did not have the space on Lot 14 to build the planned covered carport, they sought and received permission from Ms. Bordelon to extend the structure onto Lot 13. Additionally, Ms. Bordelon gave the couple permission to use her property as a driveway connecting the carport to Eddbend Road, the highway fronting the two lots. Neither of these agreements were reduced to writing, but pursuant to this oral authority, Rhett and Chantelle Hayes completed the carport and began using part of Lot 13 to access Eddbend Road.

By a dation en paiement recorded in the Avoyelles Parish Clerk of Court's Office on March 31, 2010, Ms. Bordelon transferred Lot 13 to the Union Bank, the creditor holding a mortgage on the property. On April 12, 2010, Union Bank transferred Lot 13 to Brittany Gunn. Before Ms. Gunn purchased the property, the representative of Union Bank informed her of the existence of the encroachment, and she personally inspected the property. On June 28, 2010, the legal counsel for the Union Bank wrote a letter to Mr. and Mrs. Hayes at the insistence of Brittany Gunn, requesting that they remove the encroaching portion of the carport and cease using the driveway.

Rhett Hayes responded to this demand by instituting suit against Ms. Gunn on September 20, 2010. In his initial pleading, he sought a judgment recognizing his right to the possession of that portion of Lot 13 made a part of the oral agreement with Ms. Bordelon. In the alternative, he requested that the trial court grant him a predial servitude on the carport encroachment and driveway, subject to him paying Ms. Gunn just compensation for the servitude.[2]

After resolution of some preliminary issues relative to Mrs. Hayes' involvement or noninvolvement in the litigation, Ms. Gunn answered Mr. Hayes

---

[2] Mr. Hayes also sought a show cause hearing in an effort to cause Ms. Gunn to remove obstructions she had placed in the driveway pending disposition of the issues in the litigation. However, that issue is not before us.

suit and reconvened against him seeking a judgment recognizing her as owner and possessor of all of Lot 13; ordering Mr. Hayes to remove that portion of the covered carport protruding onto Lot 13; and ordering him to cease using her property for access to Eddbend Road. She also sought a monetary judgment for the damages she claimed to have sustained as a result of Mr. Hayes' actions.

The matter went to trial on May 15, 2012, and after presentation of the evidence, the trial court took the matter under advisement. On June 21, 2012, the trial court issued written reasons for judgment rejecting Mr. Hayes' claims and rendering judgment in favor of Ms. Gunn.[3] In its reasons for judgment, the trial court concluded factually that Mr. Hayes "was in good faith as to Diane McNeal Bordelon at the time that he constructed the carport and began using the driveway[,]" but "that he was well aware at the time of construction that he did not own any portion of Lot 13." In ruling in favor of Ms. Gunn, the trial court stated:

> The case of *McDuffie v. Walker*, 51So.100 (1909) sets forth the public records doctrine as confirmed in the Louisiana Civil Code and basically provides that a third party purchaser is not bound by any unrecorded claims concerning the property purchased, even though the third person has actual knowledge from outside of the records, unless said claim is recorded in the conveyance or mortgage records of the parish wherein the property is situated. (See **Civil Code Article 3338**).
>
> Therefore, it is undisputed that pursuant to applicable law Brittany Marie Gunn purchased the entirety of Lot 13. Even though Gunn was aware of the situation concerning the carport and the driveway, without any recorded document establishing ownership to Hayes or a servitude to Hayes, Gunn is totally within her rights to rely on the public records doctrine and assert full and complete ownership of Lot 13.
>
> Therefore, although Hayes was in possession prior to the institution of this dispute, Hayes clearly does not own any portion of Lot 13. Lot 13 is clearly owned by Brittany Marie Gunn. Further, although Hayes was in good faith as to Diane McNeal Bordelon, the "good faith" does not equate to legal good faith.

---

[3] While recognizing Ms. Gunn's right to a judgment for her damages, the trial court reserved the quantum issue to a later day.

Hayes does set forth a claim that he is entitled to a legal servitude pursuant to Article 670 of the Louisiana Civil Code which provides as follows:

> When a landowner constructs in good faith a building that encroaches on an adjacent estate and the owner of that estate does not complain within a reasonable time after he knew or should have known of the encroachment, or in any event complains only after the construction is substantially completed, the Court may allow the building to remain. The owner of the building requires a predial servitude on the land occupied by the building upon payment of compensation for the value of the servitude taken and for any other damage that the neighbor has suffered.

The jurisprudence interpreting Article 670 confirms to this Court that this Article was enacted to protect persons who construct, in good faith, buildings or improvements on land upon which they believe they have an ownership interest. The application of Article 670, in the opinion of this Court, does not apply to a situation wherein a person is fully aware that he has no ownership interest in property upon which improvements are constructed, even if permission of the owner is granted, without protecting himself by preparing and filing documents such as sale, servitude, etc., the person constructing the improvements is doing so at his own risk and parol[sic].

Although Hayes alleges that Article 670 is applicable, it is clear to this Court that Civil Code Articles 482 and 487 are applicable. Civil Code Article 482 provides as follows:

> The ownership of a thing includes by accession the ownership of everything that it produces or is united with it, either naturally or artificially, in accordance with the following provisions.

> Civil Code Article 487 provides as follows: For purposes of accession, a possessor is in good faith when he possesses by virtue of an act translative of ownership and does not know if any defects in his ownership. He ceases to be in good faith when these defects are made known to him or an action is instituted against him by the owner for the recovery of the thing.

In the case at bar, Hayes clearly does not have any act translative of ownership regarding Lot 13 and he clearly knew of the defects in his ownership. Further, any potential good faith on Hayes ceased when the defects were brought out to him by Gunn and the subject dispute arose. Concerning construction of the carport, Hayes simply made a very serious and expensive mistake, that being

4

constructing a carport on property he knew he did not own and with only verbal permission from the owner.

In addition to claims concerning the carport, Hayes has issued a claim that he is entitled to a servitude of use of the driveway. The culvert situated on Lot 13 clearly existed prior to the acquisition of Lots 13, 14 and 15 by Diane McNeal Bordelon. It is quite clear that these Lots were a portion of a pasture which were used for a growing and harvesting of hay. There were no definite boundaries set forth on Lots 13, 14 and 15 on the ground. The only boundaries were pursuant to the 1971 survey of the Oren Lamartiniere.

Evidence at Trial confirms that when Lots 13, 14 and 15 were made, there were many items of shrubby and/or overgrowth on the front of the Lots as well as possibly on the Lots themselves. Testimony by Hayes confirmed that he had to perform substantial work to clear the area in front of his home. The visual inspection by the Court on the date of Trial confirms Hayes's testimony, especially considering that the front of Lot 13 is full of bushes and over growth. Although there clearly was a culvert in the location of the driveway on lot 13 prior to the acquisition by Diane McNeal Bordelon, the evidence falls woefully short of proving more probable than not that this driveway was used for the specific use and benefit of Lot 13, 14 or any lot whatsoever. This simply was an access to the Oren Larmartiniere property. Upon acquisition, Hayes began use of this driveway, again with permission of Diane McNeal Bordelon, the then owner of Lot 13. Hayes was placed on notice to discontinue use upon acquisition by Brittany Marie Gunn.

As stated in ***Palomegue v. Prudhomme*** 664 So.2d 88, any doubt as to the existence, extent, or manner of exercise of a predial servitude must be resolved in favor of the serviant estate. In the case at bar, without a specific document granting a servitude of use of the driveway on Lot 13 for the benefit of lot 14, there is doubt as to the existence, extent and manner of exercise of the alleged servitude which must be resolved in favor of the serviant estate, Lot 13.

After the trial court executed a July 19, 2012 judgment in favor of Ms. Gunn, Mr. Hayes perfected this appeal with assignments of error addressing various aspects of the trial court's reasons for judgment. While Mr. Hayes raises a number of separate assignments of error, all are encompassed within the dispute over which law applies to the situation before us: Louisiana Civil Code Article 670 or La.Civ.Code art. 482. The trial court ultimately rejected Mr. Hayes' argument that

La.Civ.Code. art. 670 applied, and found that he was not entitled to relief when La.Civ.Code art. 482 was applied.

In his first assignment of error, Mr. Hayes asserts the trial court erred in not recognizing that the litigation had been converted from a possessory action to a petitory action by Ms. Guinn's filings in response to his petition. We find no merit in this assignment of error. While the trial court recognized throughout its reasons for judgment that Mr. Hayes was in possession of the property at issue, it also recognized that his possession was not as owner. The nature of a petitory action is that of "one brought by a person who claims the ownership, but who is not in possession, of immovable property or of a real right therein, against another who is in possession or who claims the ownership thereof adversely[.]". La.Code Civ.P. art. 3651. Mr. Hayes does not claim the ownership of the encroached upon property, and asserts only that he possesses the property by virtue of permission from a prior owner. However, with regard to the concept of "possession" as contemplated in possessory/petitory actions, La.Civ.Code art. 3424 provides that "one must intend to *possess as owner* and must make take corporeal possession of the thing." (emphasis added). *See Allen v. Belgard*, 05-1284 (La.App. 3 Cir. 4/5/06), 925 So.2d 1275.

As previous stated, the trial court concluded that La.Civ.Code art. 670 did not apply to the situation before the court. We agree.

Louisiana Civil Code Article 670 provides:

> When a landowner constructs in good faith a building that encroaches on an adjacent estate and the owner of that estate does not complain within a reasonable time after he knew or should have known of the encroachment, or in any event complains only after the construction is substantially completed the court may allow the building to remain. The owner of the building acquires a predial servitude on the land occupied by the building upon payment of

> compensation for the value of the servitude taken and for any other damage that the neighbor has suffered.

However, as pointed out by the trial court in its reasons for judgment, this provision applies to situations in which the encroachment is on land that the encroacher believes in good faith that he owns, and not to a situation where he is aware that he in encroaching on the property of another. *See Bushnell v. Artis*, 445 So.2d 152 (La.App. 3 Cir. 1984); *Antis v. Miller*, 524 So.2d 71 (La.App. 3 Cir. 1988); *Pruitt v. Barry*, 551 So.2d 726 (La.App. 1 Cir. 1989); *Ensenat v. Edgecombe*, 95-0641 (La.App. 4 Cir. 5/15/96), 677 So.2d 138; *Atwood v. Hylan*, 28,971 (La.App. 2 Cir. 12/11/96) 685 So.2d 450; *Koles v. Richardson*, 2004-2181 (La.App. 1 Cir. 12/22/05), 922 So.2d 605. In the matter before us, Mr. Hayes has consistently asserted that he was aware he had no ownership interest in Lot 13, and that he was occupying the immovable property pursuant to the oral permission from his former mother-in-law. While, as pointed out by the trial court in its reasons for judgment, there existed a "good faith" relationship between Mr. Hayes and Ms. Bordelon, that relationship did not meet the legal good faith standard required in La.Civ. Code art. 670.

Mr. Hayes also asserts that Ms. Gunn's knowledge of the encroachment before she purchased Lot 13 justifies the application of La.Civ.Code art. 670. In support of this argument, Mr. Hayes directs us to the case of *Winingder v. Balmer*, 93-0874 (La.App. 4 Cir. 2/11/94), 632 So.2d 408, wherein the fourth circuit granted a servitude pursuant to La.Civ.Code art. 670 involving a situation where an eighty-year-old house encroached on the adjacent property and the purchasers of that property knew of the encroachment before purchasing it. As pointed out by Ms. Gunn in her brief to this court, *Winingder* is distinguishable from the matter

7

now before us in that there was no suggestion in the opinion that the encroaching owners were aware they were encroaching on another's property.

Given the fact that he had no written act recognizing his right to encroach on Lot 13, Ms. Bordelon could have, at any time, caused Mr. Hayes to remove the encroachment. Both ownership of land and predial servitudes are incorporeal immovables. La.Civ.Code arts. 649 and 470. A transfer of immovable property must be made by authentic act or by act under private signature. La.Civ.Code art. 1839. Nevertheless, an oral transfer is valid between the parties when the property has been actually delivered and the transferor recognizes the transfer when interrogated on oath. *Id*. An instrument involving immovable property shall have effect against third persons only from the time it is filed for registry in the parish where the property is located. *Id*.

It follows that Ms. Gunn is not bound by the oral promise made by Ms. Bordelon. Because the property was never transferred in any manner other than oral agreement, Ms. Gunn may rely on La.Civ.Code art. 3338, which states that a third party purchaser is not bound by any unrecorded claims regarding the purchased property, even if the third person has actual knowledge of the claim. *See, e.g., McDuffie v. Walker*, 51 So. 100 (La.1909). Thus, the trial court did not err in finding that Mr. Hayes was entitled to no relief pursuant to La.Civ.Code art. 670.

The trial court also found that the accession articles of the Louisiana Civil Code were applicable to Mr. Hayes' claim, but that they afforded him no relief. In reaching the conclusion that the law of accession applied to this matter, the trial court relied on La.Civ.Code arts. 482 and 487.

Louisiana Civil Code Article 482 provides as follows:

8

The ownership of a thing includes by accession the ownership of everything that it produces or is united with it, either naturally or artificially, in accordance with the following provisions.

Louisiana Civil Code Article 487 provides as follows:

For purposes of accession, a possessor is in good faith when he possesses by virtue of an act translative of ownership and does not know of any defects in his ownership. He ceases to be in good faith when these defects are made known to him or an action is instituted against him by the owner for the recovery of the thing.

The trial court found that Mr. Hayes could not qualify as a possessor in good faith because he did not possess the property by an act translative of title. The trial court summarized its analysis by stating that "[Mr.] Hayes simply made a very serious and expensive mistake, that being constructing a carport on property he knew he did not own and with only verbal permission from the owner."

The trial court found that Mr. Hayes did not meet the "good faith" requirement of either La.Civ.Code art. 670 or La.Civ.Code art. 487. Whether or not Mr. Hayes built and maintained his carport and driveway in good faith under this code provision is a factual determination. In absence of manifest error, the court of appeal will not disturb trial court's determination that landowner acted in good faith in constructing a building that encroached on the adjacent estate. *Atwood v. Hylan*, 28,971 (La.App. 2 Cir. 12/11/96), 685 So.2d 450; *Winingder v. Balmer*, 93-0874 (La.App. 3 Cir. 3/17/94), 632 So. 2d 408.

In conclusion, whether we accept the trial court's application of accession laws or find that La.Civ.Code art. 670 applies, the same result would be reached. Thus, we find no merit in Mr. Hayes' arguments on appeal.

Finally, Mr. Hayes asserts that the trial court erred in recognizing that Ms. Gunn was entitled to damages. In considering this argument, we note that the trial judge has great discretion in determining damages.

9

In considering whether an award of general damages is excessive or inadequate, we are guided by the supreme court's decision in *Youn v. Maritime Overseas Corp.*, 623 So.2d 1257 (La.1993), *cert. denied*, 510 U.S. 1114, 114 S.Ct. 1059 (1994). In that decision, the supreme court noted that "the discretion vested in the trier of fact is 'great,' and even vast, so that an appellate court should rarely disturb an award of general damages." *Id.* at 1261. Under *Youn* and its progeny, "[t]he initial inquiry is whether the award for the particular injuries and their effects under the particular circumstances on the particular injured person is a clear abuse of the 'much discretion' of the trier of fact." *Id.* at 1260. Only after the initial inquiry is answered in the affirmative should the appellate court increase or reduce the award. *Id.* In making the initial inquiry, the reviewing court should not use "a scale of prior awards in cases with generically similar medical injuries to determine whether the particular trier of fact abused its discretion in the awards to the particular plaintiff under the facts and circumstances peculiar to the particular case." *Id.* Such prior awards should be considered only after the reviewing court concludes that there has been an abuse of discretion. *Id.* Even then, the reviewing court may use prior awards only to determine "the highest or lowest point which is reasonably within [the trial court's] discretion." *Id.*

*Rayburn v. Ponthieux*, 04-1547, p. 6 (La.App. 3 Cir. 5/4/05) 902 So.2d 1136, 1139-40.

We do not find in this case that the trial court abused their discretion. Thus we find this assignment of error without merit.

## DISPOSITION

For the foregoing reasons, we affirm the judgment of the trial court and remand the matter to the trial court for consideration of the damage issue. We assess all costs of this appeal to Mr. Rhett Hayes.

**AFFIRMED AND REMANDED.**

RHETT HAYES

VERSUS

BRITTANY MARIE GUNN

**Cooks, J., Dissents.**

Rhett Hayes (Rhett) and his wife Chantelle Hayes (Chantelle) acquired ownership of Lot 14 of Oren Lamartiniere Subdivision in Avoyelles Parish from Chantelle's mother, Diane McNeal Bordelon, (Bordelon) in 2003. The couple moved a mobile home onto the Lot and wished to construct a covered carport attached to the mobile home. Lot 14 did not have enough space to build the carport so Bordelon gave oral permission to Rhett and Chantelle to use part of Lot 13 owned by her to construct the carport and driveway. The couple enjoyed use of this portion of Lot 13 for quite some time but there was never any transfer of ownership of Lot 13 on paper and no written agreement of any kind between Rhett, Chantelle, and Bordelon. In March 2010, Bordelon conveyed Lot 13 by *dation en paiement* to Union Bank in exchange for forgiveness of her mortgage obligation secured by the property. Union Bank then sold the property to Brittany Gunn (Gunn). Before selling the property to Gunn a representative of the bank told her about the encroaching carport and driveway on Lot 13. Gunn physically inspected Lot 13 before purchasing the property.

Rhett and Chantelle were notified by letter dated June 28, 2010, that Bordelon demanded removal of the portion of the carport encroaching on Lot 13 and they voluntarily cease using the portion of the driveway located on Lot 13. Rhett and Chantelle refused the demand to remove the carport and filed suit against

1

Gunn. Gunn reconvened seeking a judgment recognizing her as owner and possessor of all of Lot 13. Bordelon also sought a court order directed to Rhett and Chantelle to cease using her property for access to Eddbend Road and to remove the encroaching portion of the carport from Lot 13. The trial court rendered judgment in favor of Bordelon, rejecting Rhett and Chantelle's claims. Rhett appeals the trial court's judgment.

The majority affirms the trial court judgment finding the provisions of La.Civ.Code art 670 do not apply to the facts of this case. I disagree. I believe the trial court erred as a matter of law in failing to apply the provisions of La.Civ.Code art. 670. In *Bushnell v. Artis*, 83-452 (La.App. 3 Cir. 2/1/84), 445 So. 2d 152, this court expressly rejected the notion that the possessor in good faith contemplated by Article 670 must be one possessing by virtue of an act translative of ownership as defined in La.Civ.Code. art. 487. *Id.* at 154. This court held that the provision of Article 487 is expressly restricted to the articles on accession. *Id.* at 154. The majority relies on the fact that Rhett and Chantelle were always aware they had no title to Lot 13 and no right to possession other than Bordelon's oral permission. This, the majority says, does not meet the "good faith" standard articulated in article 670.

The cases cited by the majority do not support its position; in fact they support the contrary. There is no good faith bright line test solely dependent on an act translative of title when applying Article 670. As noted in *Bushnell*, we have rejected this exact requirement found only in Article 487. *Id*. at 154. Good faith as contemplated by Article 670 means "good faith in fact." It means what it says. The ordinary meaning of good faith as defined in Webster's Dictionary is "honesty" or "lawfulness of purpose." At the time Rhett and Chantelle constructed the carport they "honestly" acted with the express permission of the owner and their decision to act was not illegal.

2

The majority also finds Gunn is not bound by any oral promise made by Bordelon. That may be, but such is not relevant in resolving this dispute. The majority finds Gunn is protected under the provisions of La.Civ.Code art. 3338, which provide that a third-party purchaser is not bound by any unrecorded claims affecting the purchased property even if the third-party has actual knowledge of the claim. This finding ignores the applicability of Article 670 which clearly protects Rhett and Chantelle who, at all times, acted in good faith with the express permission of the owner, Bordelon. Rhett and Chantelle are exactly the type of landowners who, in good faith, construct a building that encroaches on the neighboring land to which no objection is timely made. Not only was no objection made to Rhett and Chantelle's construction, they were given express permission by the owner making them actors in good faith. Certainly it cannot be said they acted in any bad faith.

The majority also examines the applicability of the accession articles in the Civil Code and finds they offer Rhett no relief. I agree with that assessment. To be a possessor in good faith under article 487 one must possess by an act translative of ownership and not know of any defects in his ownership. Be that as it may, it is Article 670 which affords Rhett and Chantelle a predial servitude protecting them as actors in good faith who not only met with no timely objection from the neighboring landowner, but had her express permission initially and continuing until she relinquished ownership.

The majority also finds no abuse of the trial court's much discretion in finding Gunn entitled to damages. Because the trial court committed legal error in failing to apply Article 670 the case must be remanded. If the trial court in applying Article 670 grants a predial servitude to Rhett and Chantelle the Code then directs the trial court to award "payment of compensation for the value of the

3

servitude taken and for any other damages that the neighbor has suffered." See LA.Civ.Code art. 670.

I further note Gunn was well-informed about the encroachment before purchasing the property and purchased it with full knowledge of its existence. Perhaps that fact may figure in the trial court's discretionary assessment of appropriate compensation and/or damages. It may be the price Gunn actually paid for the property factored in the obvious encroachment the Bank warned of prior to the sale. The trial judge is free to award damages in the amount necessary to compensate her, even for the full value of the property, should he decide that the property is wholly unusable for the purposes for which she intended when purchased. The court simply did not reach the damage issue because it legally erred in finding Article 670 required that Rhett and Chantelle have an act translative of title to be judged as possessor's in good faith.

For the reasons stated I respectfully dissent.