NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

10-0943

GERALDINE HENRY, ET UX.

VERSUS

BRETT JONES, ET AL.

\*\*\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
TWENTY-SEVENTH JUDICIAL DISTRICT COURT
PARISH OF ST. LANDRY, NO. 08-C-4767-C
HONORABLE ALONZO HARRIS, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*\*\*

JIMMIE C. PETERS
JUDGE

\*\*\*\*\*\*\*\*\*\*\*\*

Court composed of Jimmie C. Peters, Elizabeth A. Pickett, and James T. Genovese, Judges.

AFFIRMED.

Chuck D. Granger
D. Jason Meche
Granger Law Firm
P. O. Drawer 1849
Opelousas, LA 70570
(337) 948-5000
COUNSEL FOR PLAINTIFFS/APPELLEES:
    Geraldine Henry
    Jules Henry

**Ian A. MacDonald**
**Jones Walker**
**P. O. Drawer 3408**
**Lafayette, LA 70502-3408**
**(337) 262-9000**
**COUNSEL FOR DEFENDANTS/APPELLANTS:**
    **Brett A. Jones**
    **Bellsouth Telecommunications, Inc. d/b/a AT&T Louisiana**

PETERS, J.

This litigation arises from a September 11, 2007 automobile accident in Opelousas, Louisiana. Geraldine and Jules Henry, husband and wife, brought suit against Brett A. Jones and his employer, Bellsouth Telecommunications, Inc. d/b/a AT&T Louisiana (Bellsouth), to recover for the damages they sustained as a result of the accident. A jury trial resulted in a favorable judgment to the plaintiffs, and both litigants were dissatisfied with the jury's general damage award. The defendants appealed the damage award as excessive, and the plaintiffs answered the appeal, complaining that the same award was inadequate. For the following reasons, we affirm the general damage award in all respects.

The accident at issue occurred at the intersection of Academy Street and Landry Street in Opelousas, Louisiana. Mr. Jones ran a red light and struck the passenger side of the vehicle being driven by Mrs. Henry. At trial, the causation and extent of the plaintiffs' injuries were the only issues remaining for the jury to decide. After completion of the evidence, the jury returned its verdict awarding Mrs. Henry $50,000.00 for past physical and mental pain and suffering, $23,053.00 for past medical expenses, and $5,000.00 for loss of enjoyment of life. The jury also awarded Mr. Henry $5,000.00 for loss of consortium.

The defendants assert on appeal that the jury's award of $50,000.00 in general damages is an abuse of its discretion and should be reduced. In their answer to the appeal, the plaintiffs seek an increase in that amount to $75,000.00.

## OPINION

In considering whether the award of general damages is excessive or insufficient, we are guided by the decision in *Youn v. Maritime Overseas Corp.*, 623 So.2d 1257, 1261 (La.1993), *cert. denied*, 510 U.S. 1114, 114 S.Ct. 1059 (1994), in

which our supreme court noted that "the discretion vested in the trier of fact is 'great,' and even vast, so that an appellate court should rarely disturb an award of general damages." Under *Youn*, "[t]he initial inquiry is whether the award for the particular injuries and their effects under the particular circumstances on the particular injured person is a clear abuse of the 'much discretion' of the trier of fact." *Id*. at 1260. Only after this initial inquiry is answered in the affirmative should the appellate court increase or reduce the award. *Id*.

The facts surrounding what occurred are not seriously disputed. Immediately after the accident, Mrs. Henry sought examination and treatment at the Opelousas General Hospital emergency room. The emergency room personnel x-rayed her back and neck, prescribed Celebrex, iced her left knee, gave her crutches, and recommended that she follow up with her regular physician the following week.

A week after the accident, on September 18, 2007, Mrs. Henry saw her primary care physician, Dr. Eric Michael Chatman, an Opelousas, Louisiana internal medicine physician. According to Dr. Chatman, Mrs. Henry presented herself to him complaining of pain across her chest; neck pain; pain and bruises on her right breast area from the seat belt; a burning pain radiating from her left hip to her left knee and foot; and posterial and frontal headaches.[1] Additionally, Dr. Chatman noted that at the time Mrs. Henry was noticeably limping. The doctor testified that his physical examination of the patient revealed a decreased range of motion in her neck and spine, with a significantly decreased range of motion in her upper spine. Dr. Chatman prescribed Celebrex, an anti-inflammatory and painkiller, and diathermy (electromagnetic heat) treatments.

---

[1]Mrs. Henry related all of these complaints to injuries sustained in the accident of September 11, 2007.

2

Dr. Chatman next saw Mrs. Henry on September 25, 2007. By that time, she had undergone three diathermy treatments, with the last one having occurred on the day of her office visit. According to Dr. Chatman, Mrs. Henry stated that although the treatments and medications were giving her some relief, she still suffered pain in the left hip, knee, and foot. The left knee pain was worse with flexion. Dr. Chatman noted that the right side of his patient's face remained swollen, but that the chest pain associated with the seat belt activation during the accident had improved. Still, Mrs. Henry complained of continuing but intermittent headaches and pain in her neck and her upper back, extending out to her shoulders. Dr. Chatman recommended continuation of the diathermy treatments and switched her prescription to Durabac, an anti-inflammatory and mild muscle relaxer. He also ordered an x-ray of Mrs. Henry's neck and prescribed physical therapy for her.

Mrs. Henry began physical therapy for her knee injury with Murphy Jude Martin, an Opelousas, Louisiana physical therapist, on September 27, 2007.[2] Mr. Martin testified that Mrs. Henry was still walking with crutches and was only able to bend her left knee half as far as the right knee on September 27, when he first evaluated his new patient. Mr. Martin initially treated Mrs. Henry's injuries to the knee with heat, ice, and electric stimulation to reduce the pain and started Mrs. Henry on a regimen of exercises to help her regain a full range of motion. Mrs. Henry completed eight or nine sessions of physical therapy for her knee injury and for her back and neck pain.

When Dr. Chatman next saw Mrs. Henry on October 9, 2007, she reported that the short period of physical therapy had resulted in an improvement in her neck and

---

[2]Mr. Martin testified that another physical therapist with his clinic was treating Mrs. Henry's neck and back pain at the same time as his treatment for the knee injury.

upper back pain but that she still had some pain in those areas. Additionally, her left knee continued to lock on her when walking, she continued to have a burning pain in her left hip, and she still suffered from intermittent posterior headaches. Dr. Chatman also noted that she now suffered from some anxiety as a result of the accident.

Mrs. Henry completed the last physical therapy sessions on October 24, 2007, and the physical therapy records for that date reflect that the hip, back, and knee pain had been completely resolved. When Dr. Chatman saw his patient again on October 24, 2007, she still complained of stiffness and tenderness in her back and of a continuing burning sensation over her left hip with a pulling sensation in her left knee. Dr. Chatman recommended that she continue applying heat to the areas at issue, continue the medications he had prescribed, and begin a physical therapy regime at home.

Dr. Chatman's November 7, 2007 office records indicate that Mrs. Henry was still complaining of left knee pain and stiffness, which was worse with walking and prolonged standing or sitting. She also continued to have a burning sensation, but now it was in her left knee and traveling to the bottom of the foot. Dr. Chatman prescribed another round of physical therapy and continued heat applications and medication, including Darvocet as needed for pain. When Mrs. Henry returned to Dr. Chatman on November 20, 2007, she had yet to begin the new round of physical therapy and was complaining of persistent left knee pain with the burning sensation complained of on November 7, 2007. Additionally, Dr. Chatman noted that she now had fluid in the joint of her left knee.

When Kelly Baracco Morel, a physical therapist at Opelousas General Hospital, first began treating Mrs. Henry on November 29, 2007, she noted that Mrs. Henry had

4

swelling over her left kneecap, that Mrs. Henry limped while walking, and that Mrs. Henry had slight difficulty bending her left knee. Two and one-half months and nineteen physical therapy sessions later, Ms. Morel concluded that Mrs. Henry had made significant progress in decreasing the pain and swelling in her knee and that she had improved her ability to bend her knee.

In between, however, Mrs. Henry continued to complain to Dr. Chatman of her knee problems. At her December 4, 2007 appointment with Dr. Chatman, Mrs. Henry informed him that the pain in the left knee persisted. Additionally, there continued to be fluid in the left knee. On January 15, 2008, Dr. Chatman noted that Mrs. Henry still had some left knee pain and a burning sensation to the medial and lateral aspects of her left knee, that her left knee remained swollen, and that she was still limping, but Mrs. Henry reported to him that she felt the physical therapy was helping. Dr. Chatman continued Mrs. Henry on Celebrex as she continued her physical therapy sessions.

Ms. Morel's final physical therapy session with Mrs. Henry occurred on February 13, 2008. At that time, according to Ms. Morel, Mrs. Henry was still having an irritating and nagging pain and swelling in her left knee, although the range of motion had improved. On February 14, 2008, Mrs. Henry had an MRI of her spine and left knee and an x-ray of her left knee.

At her February 22, 2008 appointment, Mrs. Henry complained to Dr. Chatman of pain in her left knee down to her upper shin. According to the doctor, his patient was still limping, and her left knee was swollen. Concluding that Mrs. Henry's pain medication was not working satisfactorily, Dr. Chatman changed her prescription to Darvocet as needed for pain. Dr. Chatman's testified that the February 14 MRI reflected relatively mild degenerative changes and a minimal subtle tear in the left

5

knee. Dr. Chatman referred Mrs. Henry to Dr. Charles Theriot Texada, an orthopedic surgeon at Mid-State Orthopaedic Clinic in Alexandria, Louisiana.

Dr. Texada began treating Mrs. Henry for her left knee pain on March 13, 2008. On that day he injected her knee with cortisone and two painkillers. When he next saw Mrs. Henry, on April 3, 2008, she reported that she had good temporary relief as a result of the shot, but it lasted only two days.

By the time of Mrs. Henry's next appointment with Dr. Chatman, on March 26, 2008, Mrs. Henry reported that she had less pain, although Dr. Chatman's examination of her left knee reflected that some evidence of pain remained.

On April 14, 2008, Dr. Texada performed arthroscopic surgery on Mrs. Henry's left knee, during which he inspected and resolved the problems in that knee. Dr. Texada described this as a minimally invasive surgery, which lasted fifteen to twenty minutes, and testified that Mrs. Henry was under anesthesia for approximately forty minutes. Dr. Texada testified that he found articular debris – flecks of cartilage – in the suprapatellar pouch and that the synovial lining was inflamed. Dr. Texada removed the debris and shaved out some tissue in the medial gutter to reduce the inflammation. Mrs. Henry had an uneventful recovery from the surgery. Two weeks after the surgery, on April 28, 2008, Mrs. Henry returned for physical therapy with Ms. Morel.

When Dr. Chatman examined Mrs. Henry on May 21, 2008, five weeks after the surgery, he found that she was feeling much better and that although her left knee was stiff and sore and had some mild edema, she had much less pain and a better range of motion. On June 11, 2008, Mrs. Henry told Dr. Chatman that her knee was feeling better. When Dr. Texada last saw Mrs. Henry, on June 20, 2008, he found that she was doing well.

After nineteen physical therapy sessions post-surgery, Ms. Morel discharged Mrs. Henry on July 2, 2008, with a report of normal results. When Dr. Chatman saw Mrs. Henry on August 11, 2008, she was limping and told the doctor that her knee pain had recently increased. In examining Mrs. Henry on this date, Dr. Chatman noted medial and anterior tenderness to palpation in the knee. He related this finding as a flare-up relating back to the knee injury arising from the accident. Dr. Chatman discharged Mrs. Henry from his care in relation to her knee injury on November 17, 2008. At that time, according to Dr. Chatman, Mrs. Henry had very minimal tenderness to palpation and had a normal gait.

Mrs. Henry testified that prior to the accident she would garden and walk for exercise, usually walking around the Queen of Angels Church three times a week. After the accident, she was confined to crutches for three weeks and has yet to recover to her pre-accident level of exercise. She has limited her walking because of the pain associated with such exercise, and any kneeling (gardening or in church) is out of the question. Furthermore, changes in the weather cause her knee to ache and throb. Driving is now limited, according to Mrs. Henry, and trips to Shreveport and Houston to see her children are only half as often as before. Additionally, she can no longer participate in her primary entertainment activities she enjoyed before the accident (going to the movies, eating out, and visiting with friends).[3] Mr. Henry supported his wife's testimony concerning her current limitations.

At the time of the accident, Mrs. Henry was in her early sixties. As a direct result of the accident, she sustained injuries to almost all parts of her body. Most of the initial injuries subsided shortly after the accident, but she suffered lingering pain

---

[3]Mrs. Henry was in a wheelchair at the time of trial, but explained to the jury that this was as a result of three strokes, the first of which occurred on December 10, 2009, and that the strokes were not related in any way to the accident.

from the neck and back injuries, as well as the injuries to her lower extremities. Between the accident on September 11, 2007, and her ultimate release by her treating physician on November 17, 2008, Mrs. Henry underwent continued medical evaluation and treatment, three separate physical therapy regimes, and left knee surgery. We find no merit in the defendant's claim that the jury's $50,000.00 award was excessive. Nor do we find any merit in the plaintiffs' claim that the jury abused its vast discretion in not awarding more in general damages. In other words, the award for the particular injuries sustained by Mrs. Henry and the effects of those injuries, under the particular circumstances associated with Mrs. Henry's background and history,[4] is not a clear abuse of the much discretion of the trier of fact. *Youn*, 627 So.2d 1257.

## DISPOSITION

We affirm the jury's general damage award in all respects. We assess the costs of this appeal equally between the plaintiffs, Geraldine Henry and Jules Henry, and the defendants, Brett A. Jones and Bellsouth Telecommunications, d/b/a/ AT&T Louisiana.

**AFFIRMED.**

> **This opinion is NOT DESIGNATED FOR PUBLICATION.**
> **Uniform Rules—Courts of Appeal, Rule 2–16.3.**

---

[4]The record does reflect that Mrs. Henry had some preexisting chronic degenerative arthritis in the left knee which was made worse by her physical condition.