# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 23-291


NOLAN METOYER

VERSUS

STATE OF LOUISIANA, DEPARTMENT

OF AGRICULTURE


**********

APPEAL FROM THE
TENTH JUDICIAL DISTRICT COURT
PARISH OF NATCHITOCHES, NO. C-91677 B
HONORABLE LALA B. SYLVESTER, DISTRICT JUDGE

**********

## D. KENT SAVOIE
## JUDGE

**********

Court composed of D. Kent Savoie, Candyce G. Perret, and Ledricka J. Thierry, Judges.


**AFFIRMED IN PART; REVERSED IN PART; AND RENDERED.**

**Liz Murrill**
**Attorney General**
**State of Louisiana**
**Jeannie C. Prudhomme**
**Assistant Attorney General**
**Louisiana Department of Justice**
**Litigation Division**
**556 Jefferson Street, 4th Floor**
**Lafayette, Louisiana 70501**
**(337) 262-1700**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **State of Louisiana through the Board of Supervisors of the Louisiana**
    **State University and Agricultural and Mechanical College**

**David A. Johnson**
**Assistant Attorney General**
**State of Louisiana**
**Louisiana Department of Justice**
**Litigation Division**
**900 Murray Street, Suite B-100B**
**Alexandria, Louisiana 71301**
**(318) 487-5944**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **State of Louisiana through the Board of Supervisors of the Louisiana**
    **State University and Agricultural and Mechanical College**

**Edwin Dunahoe**
**Dunahoe Law Firm**
**402 Second Street**
**Natchitoches, Louisiana 71457**
**(318) 352-1999**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
    **Nolan Metoyer**

**David Thomas Butler, Jr.**
**Funderburk & Butler**
**1111 South Foster Drive, Suite G**
**Baton Rouge, Louisiana 70806**
**(225) 924-1000**
**COUNSEL FOR INTERVENOR/APPELLEE:**
    **LUBA Casualty Ins. Co.**

**SAVOIE, Judge.**

After a trial by jury, judgment was rendered in favor of Plaintiff, Nolan Metoyer, and against Defendant, State of Louisiana through the Board of Supervisors of the Louisiana State University and Agricultural and Mechanical College. The State now appeals. For the following reasons, we affirm in part, reverse in part, and render judgment.

## FACTS AND PROCEDURAL HISTORY

This matter arises out of an incident that occurred on May 10, 2019, in Natchitoches, Louisiana. Plaintiff was employed as a janitor for the Natichitoches Parish Commission. As part of his duties, Plaintiff was required to empty trash and perform other janitorial services in the Natchitoches Parish Courthouse, as well as the Courthouse Annex facilities. The Louisiana State University Agricultural Extension Office (Extension Office)[1] was housed in one of these offices.

On the day of the incident, Plaintiff opened the door to the Extension Office, when he was set upon by a large dog. The dog belonged to Defendant's employee, Dera Killingsworth. As he turned to run from the dog, Plaintiff injured his leg and knee, specifically his patellar tendon was ruptured and completely dislodged from his kneecap. Plaintiff was admitted to Natchitoches Regional Medical Center, where it was determined the injury would require surgery. Surgery was performed the same day.

As a result of the incident and his injuries, Plaintiff filed suit against Defendant for damages. LUBA Casualty Insurance Company intervened as the

---

[1] The Extension Office is operated by Defendant.

workers' compensation insurer for the Natchitoches Parish Commission, requesting reimbursement for benefits paid to Plaintiff as a result of this incident.

A jury trial was held August 8-10, 2022. Plaintiff moved for directed verdict on the issue of comparative fault, which the trial court granted. The jury found Defendant liable to Plaintiff and awarded him $1,247,527.24 in damages. Judgment was signed by the trial court on December 31, 2022, and amended on February 23, 2023. Defendant now appeals.

## ASSIGNMENTS OF ERROR

1. Where Plaintiff only established $39,190.18 in medical expenses, the jury erred in awarding him $40,000.00 for those damages.

2. The jury abused its discretion in awarding Plaintiff $1.2 million in general damages and the award must be further reduced to below the $500,000.00 statutory cap based on other similarly-situated plaintiffs.

## DISCUSSION

I.  *Assignment of Error Number One – Medical Expenses*

In its first assignment of error, Defendant complains that the jury erred in awarding $40,000.00 in past medical expenses. Defendant argues that the record only supports an award of $39,190.18 in past medical expenses. Defendant contends that Plaintiff may only be awarded past medical expenses that are actually proven. *See Lacour v. Travelers Ins. Co.*, 502 So.2d 209 (La.App. 3 Cir. 1987). Consequently, Defendant asserts that the jury erred in rounding the amount to $40,000.00.

"Special damages are those damages which may be determined with some degree of certainty and include past and future medical expenses." *Copell v. Arceneaux Ford, Inc.*, 20-299, p. 23 (La.App. 3 Cir. 6/9/21), 322 So.3d 886, 899. "The plaintiff bears the burden of proving entitlement to special damages by a

preponderance of the evidence." *Id.* at 899–900. "When reviewing a factfinder's factual conclusions regarding special damages, appellate courts employ the manifest error standard of review." *Id.* at 900.

Plaintiff does not dispute that the invoices for past medical expenses amount to $39,190.18; rather, he argues that he made a showing, through his testimony, that he was required to use over-the-counter medications and to secure travel to his physical therapy appointments. Plaintiff submits that the net effect of this testimony reasonably supports the jury's increase of his past medical expenses by over $800.00.

Plaintiff cites *Hobgood v. State Farm Mutual Automobile Insurance Co.*, 14-581 (La.App. 4 Cir. 12/17/14), 156 So.3d 1244, for the proposition that past medical expenses can be "rounded up." In *Hobgood*, the plaintiff appealed the award of past medical expenses, arguing that the jury should have awarded her $69,987.48, rather than the jury's award of $69,000.00. Finding that the evidence reflects $68,987.48, the appellate court refused to increase the award and, also, declined to disturb the award even though it appeared the jury "rounded up" by $12.52. We note that in *Hobgood*, the defendant did not appeal the amount awarded to plaintiff for past medical expenses.

In *Reid v. Allstate Insurance Co.*, 407 So.2d 34 (La.App. 3 Cir. 1981), a panel of this court "ruled that prescription receipts, which failed to include the complete date and the identity of the prescribed drug, were insufficient to satisfy the plaintiff's burden of proof absent a stipulation from the defendant acknowledging their connection to the accident at issue." *Mosbey v. Jefferson Par. Sheriff's Office*, 18-69, p. 12 (La.App. 5 Cir. 6/27/18), 250 So.3d 1110, 1119. In *Mosbey*, the trial court excluded from its award for past medical expenses a portion

3

of plaintiff's prescription expenses. The appellate court determined that the trial court was not manifestly erroneous in finding that "prescription receipts lacking information to identify the patient, prescription and prescribing physician were insufficient to satisfy plaintiff's burden."

In the present case, we find the evidence does not support an award of $40,000.00 for past medical expenses. While Plaintiff testified about over-the-counter medication usage and the necessity for rides to physical therapy as a result of the accident, there are no receipts in the record that would establish the cost of these items. As shown by the case law, receipts for prescription medications were found to be insufficient evidence when lacking identifiable information about the patient, prescriptions and physician. As such, we find the lack of any receipts for Plaintiff's prescriptions and transportation to be insufficient as well. Plaintiff's award for past medical expenses is reduced to $39,190.18.

## II. Assignment of Error Number Two – General Damages Award

In this assignment of error, Defendant asserts that the jury erred in its award of general damages. The jury awarded Plaintiff $1,200,000.00 in general damages. This award was reduced to the $500,000.00 statutory cap applied to state subdivisions. *See* La.R.S. 13:5106(B)(1). Defendant contends this amount should be reduced even further to $195,000.00 based on the evidence adduced at trial.

"General damages are those which are inherently speculative in nature and cannot be fixed with mathematical certainty." *Bouquet v. Wal-Mart Stores, Inc.*, 08-309, p. 4 (La. 4/4/08), 979 So.2d 456, 458. The Louisiana Supreme Court in *Bouquet*, 979 at 459, explained:

> The standard of review applicable to a general damages award is the abuse of discretion standard. *Anderson* [*v. Welding Testing Lab., Inc.,* 304 So.2d 351, 352 (La.1974)]; *Coco v. Winston Indus., Inc.,* 341

4

So.2d 332, 335 (La.1976). The trier of fact is afforded much discretion in assessing the facts and rendering an award because it is in the best position to evaluate witness credibility and see the evidence firsthand. *Duncan* [*v. Kansas City So. Ry. Co.*], 00-0066, p. 13 [(La. 10/30/00), 773 So.2d 670, 682]. "Vast discretion is accorded the trier of fact in fixing general damage awards."); *Anderson v. New Orleans Pub. Serv., Inc.,* 583 So.2d 829, 834 (La.1991). An appellate court may disturb a damages award only after an articulated analysis of the facts reveals an abuse of discretion. *Theriot v. Allstate Ins. Co.,* 625 So.2d 1337, 1340 (La.1993); *Youn v. Maritime Overseas Corp.,* 623 So.2d 1257, 1261 (La.1993), *cert. denied,* 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994). The role of an appellate court in reviewing a general damages award is not to decide what it considers to be an appropriate award but rather to review the exercise of discretion by the trier of fact. *Duncan,* 00-0066, p. 13, 773 So.2d at 682-83; *Youn,* 623 So.2d at 1260. To determine whether the fact finder has abused its discretion, the reviewing court looks first to the facts and circumstances of the particular case. *Theriot,* 625 So.2d at 1340; *Youn,* 623 So.2d at 1261.

Only if a review of the facts reveals an abuse of discretion, is it appropriate for the appellate court to resort to a review of prior similar awards. *Duncan,* 00-0066, p. 14, 773 So.2d at 683; *Cone v. Nat'l Emergency Serv. Inc.,* 99-0934, p. 8 (La.10/29/99), 747 So.2d 1085, 1089; *Youn,* 623 So.2d at 1261. In a review of the facts, the test is whether the present award is greatly disproportionate to the mass of past awards for truly similar injuries. *Theriot,* 625 So.2d at 1340; *Reck v. Stevens,* 373 So.2d 498, 501 (La.1979). Prior awards, however, are only a guide. *Theriot,* 625 So.2d at 1340.

Plaintiff was forty-seven-years old at the time of his injury. He ruptured his patellar tendon, which required surgery, performed by Dr. Justin Duke, to reattach the patellar tendon to the patella. The surgery entailed drilling holes into the kneecap and inserting wires into the holes in order to secure the tendon to the kneecap. Plaintiff was placed in an immobilizing brace for over two months post-surgery. During this time, Plaintiff developed blisters at the surgery site, which required attention from the wound care facilities at Natchitoches Regional Medical Center. Plaintiff was treated three times at the wound care facility, on May 22, 2019, May 30, 2019, and June 6, 2019. This treatment included debridement of the wound.

Once Plaintiff was out of the immobilizing brace, he transitioned to a movable leg brace, which he wore for approximately six weeks. During this time, Plaintiff attended physical therapy sessions, wherein the physical therapist would gradually bend his knee ten degrees each week until he was able to bend his knee at one-hundred twenty degrees. Plaintiff attended these physical therapy sessions three times a week for five weeks.

At an examination on August 21, 2019, Dr. Duke found that Plaintiff had one-hundred thirty degrees flexion with no pain. Plaintiff was released to return to work, with limitations. Plaintiff was also discharged from physical therapy on August 22, 2019.

Plaintiff testified that he continued to have issues; however, he did not see a doctor as a result of these issues until much later. He contends that the COVID pandemic caused him to put off going to the doctor. Dr. Duke confirmed that he stopped seeing patients in his clinic in March 2020. Additionally, in May 2020, Dr. Duke moved his practice. Plaintiff testified that he could not locate Dr. Duke and that he was unable secure other orthopedic follow-up care in Natchitoches. Dr. Duke testified that his office had a lot of issues with people who could not locate him for follow-up care.

Plaintiff eventually located Dr. Duke and scheduled a visit on December 3, 2021. Plaintiff presented with a painful, swollen knee. Dr. Duke ordered x-rays and an MRI of Plaintiff's knee. The tests were performed, but Plaintiff did not return for a follow-up visit. Dr. Duke diagnosed Plaintiff with full thickness cartilage loss on the patella and grade three post-traumatic arthritis. Dr. Duke opined that Plaintiff would continue to have problems with arthritis, as long as he stays active. Dr. Duke testified that arthritis is better tolerated in people who lead

6

sedentary lifestyles. Dr. Duke further testified that Plaintiff's arthritis will worsen over his lifetime, and a future surgery is a possibility.

Plaintiff testified that he had continued pain and swelling, with a limitation on his activities that has progressively gotten worse. According to Plaintiff, he has continued pain, knee buckling, and problems climbing stairs. He cannot kneel on the knee in question. He also testified that he sometimes walks with a limp. Plaintiff further testified that he was concerned about how active he would be in the future, particularly with any future grandchildren he may have.

We find that the evidence does not reveal an abuse of discretion. Plaintiff had major surgery at the relatively young age of forty-seven years old, which required immobilization of his knee for over two months. After developing blisters at the surgery site, Plaintiff had the wound cleaned three times before it healed. He then attended physical therapy sessions multiple times a week for five weeks, to allow his knee to bend normally again. While there was a lapse in treatment due to the COVID pandemic and Plaintiff's inability to locate his physician, Dr. Duke testified that Plaintiff's post-traumatic arthritis was caused by the injury at issue and was not uncommon for this type of injury. The evidence shows that the arthritis will worsen with time and may require surgery in the future. Plaintiff testified to his daily pain, limitations, and concerns for his future ability to lead an active life. Based on the foregoing, we find that Plaintiff's award for general damages, which has already been reduced to $500,000.00 from $1,200,000.00, should not be reduced further.

**DECREE**

The portion of the trial court's judgment awarding past medical expenses in the amount of $40,000.00 is reversed. We render judgment for past medical

7

expenses in the amount of $39,190.18.  The trial court's judgment is affirmed in all other respects.  Costs of these proceedings in the amount of $8,967.03 are assessed to Defendant State of Louisiana through the Board of Supervisors of the Louisiana State University and Agricultural and Mechanical College.

**AFFIRMED IN PART; REVERSED IN PART; AND RENDERED.**